FIRST NATIONAL BANK OF ARMSTRONG, Appellee, v. ELMER C. SMITH, Appellant, et al., Appellee.

**BILLS AND NOTES:** Accommodation Note—Instructions. Principle
1 affirmed that a party for whose benefit an accommodation note is given, may not recover of the maker; and instructions held to properly present the defense.

**FRAUD:** False Representations—Scienter—How Shown. After showing, in actions for fraud, that a representation was made and that it was false, scienter—fraudulent knowledge—may be established by showing that the maker of the representation (1) *actually* knew that the representation was false, or (2) made the representation as of his own personal knowledge, or in such an unqualified way that he implied personal knowledge of its truthfulness, or (3) was under a duty, under the circumstances, to know whether the representation was true.

**BILLS AND NOTES:** Principal and Agent—Conspiracy—Holdership in
3 Due Course. Principles reaffirmed (1) that, if the payee of a fraudulently induced promissory note was the agent of the ultimate indorsee in obtaining the note, or if the note was obtained as the result of a conspiracy between said payee and indorsee, then the

indorsee may not recover; and (2) that, if the fraud in obtaining the note was the fraud of the payee only, then the indorsee may recover if he shows his holdership in due course.

**PRINCIPAL AND AGENT: Authority of Agent—Accepting Benefit of**
4  **Unauthorized Fraud.** A principal is bound by the *unauthorized* fraudulent conduct of his agent in obtaining a promissory note for the principal, *in case the principal seeks to enforce the note.*

**TRIAL:  Instructions—Requests—Improper Rejection Because Faulty.**
5  Principle applied that the trial court may not reject *in toto* a requested instruction because it is faulty, when the request does bring to the attention of the court a material principle of law which is applicable under the pleadings and evidence. So held as to the effect of the act of a principal in accepting the benefits of the unauthorized fraudulent conduct of his agent.

**BILLS AND NOTES: Negotiability—Authority to Sell Collateral.** A
6  provision in a promissory note to the effect that, "should suit be commenced for the collection of this note * * * holder may sell * * * any collateral held as security," does not authorize a sale *before the maturity of the note,* and therefore does not render the note nonnegotiable.

Headnote 1:  8 C. J. pp. 259, 1080.  Headnote 2:  26 C. J. p. 1108. Headnote 3:  7 C. J. p. 543; 8 C. J. pp. 780, 984; 26 C. J. p. 1121.  Headnote 4:  2 C. J. pp. 494, 879.  Headnote 5:  2 C. J. p. 494; 38 Cyc. p. 1709.  Headnote 6:  8 C. J. p. 127.

*Appeal from Kossuth District Court.*—F. C. DAVIDSON, Judge.

MAY 12, 1925.

ACTION at law against the maker and indorser of two promissory notes. From a judgment upon a verdict for plaintiff, the maker of the notes appeals.—*Reversed and remanded.*

*Healy & Breen* and *Hanson & Schaupp,* for appellant.

*Morse & Lee* and *Sullivan, McMahon & Linnan,* for appellee bank.

VERMILION, J.—The action is upon two promissory notes: one for $4,000, and one for $1,500, signed by the appellant, Elmer Smith, payable to the appellee Ernest Smith, and in-

dorsed by the payee. The notes are renewals of earlier like notes so indorsed. The appellee bank claimed to be a holder of the notes in due course. It is undisputed that the original notes were, at different times, executed by the appellant to his brother Ernest as payee, at the request of the latter, who indorsed and delivered them to the bank, and received credit for their face upon his open checking account; and that the renewals in suit were executed and indorsed in the same manner, and turned over to the bank.

The allegations of the answer as amended were to the effect that, at the times the original notes were executed, Ernest Smith represented to appellant that he was indebted upon a mortgage in the sum of $15,000, and to the appellee bank in the sum of approximately $11,000, and had substantially no other indebtedness; that the officers of the bank had advised him that his indebtedness to the bank was in excess of the amount the bank was permitted to loan to one person, and had requested him to procure the appellant to sign the notes payable to Ernest, who would indorse them to the bank, and by that means his indebtedness to the bank would appear to be reduced, and would not be questioned by the national bank examiner, and that the notes would be merely for the accommodation of the bank, and appellant would incur no liability to the bank; and that the execution of the renewals in suit was induced by the same representations; that the representations were made as of the personal knowledge of Ernest, and for the benefit of the bank, and were false; and that appellant relied upon them. It was further alleged that the bank had full knowledge of such representations and their falsity; and that its officers had conspired with Ernest to so procure the notes; and that the bank intended to hold appellant thereon; that the bank was not a holder in due course of the notes; and that they were without consideration, and were mere accommodation notes.

The defenses so pleaded may be stated as: (1) That the notes were without consideration, and were executed, and taken by the bank, for the accommodation of the bank; (2) fraud on the part of the bank, practiced by Ernest Smith as its agent, or through a conspiracy between the bank's officers and Ernest, in procuring the notes; (3) that the notes were procured by fraud

on the part of Ernest; and that the bank was not a holder in due course. The question of the sufficiency of the evidence to establish any of these propositions is not before us.

There was evidence tending to show that the cashier of the bank directed Ernest to procure the notes for the accommodation of the bank. The testimony also tended to show that representations, substantially as pleaded, were made by Ernest to appellant. It might have been found by the jury, therefore, that the representations were expressly authorized to be so made by the bank, or that, if not so authorized, yet Ernest was the agent of the bank to procure the notes, and made the representations without the knowledge or authority of the bank. Or, on the other hand, it might have been found that Ernest did not represent the bank, and acted for himself in procuring the notes, and that the bank was a holder in due course.

The errors assigned, with one exception, relate to the instructions given by the court to the jury upon these issues, and to the refusal of the court to give certain instructions requested by appellant.

I. Error is assigned on the giving of an instruction on the claim of the appellant that the notes were for the accommodation of the bank, and on the refusal of the court to give a requested instruction on the same subject. The requested instruction was a correct statement of the law that a party for whose accommodation a note is given cannot recover thereon against the maker; and it might well have been given. *First Nat. Bank v. Felt,* 100 Iowa 680; *Woodbury v. Glick,* 151 Iowa 661; *Smouse v. Waterloo Sav. Bank,* 198 Iowa 306. But the instruction given by the court is not open to the criticism made of it, that it assumed that the notes were for the accommodation of Ernest, the payee. It correctly stated the appellant's claim, that the notes were for the accommodation of the bank, and instructed that, if this defense was established, the verdict should be for the appellant. Nor is the instruction open to the further criticism made, that it imposed too great a burden on appellant. Aside from such fraud of Ernest alone as would not be a defense if the bank was a holder in due course, two distinct defenses were presented: (1) That the notes were for the accommodation of the

1. BILLS AND NOTES: accommodation note: instructions.

bank; and (2) fraud of the bank, practiced by Ernest as its agent or representative. It was with the defense that the notes were for the accommodation of the bank,—not with the defense of fraud,—that the instruction in question dealt; and it correctly required, under the testimony, a finding of an agreement on the part of the bank that the notes were for its accommodation, communicated to appellant through Ernest, as its representative, before that defense was established. The notes were not payable to the bank. While the instruction might have been couched in plainer and more concise language, it sufficiently covered the proposition presented by the one asked. We find no prejudicial error here.

II. An instruction is criticized because it required a finding, in order to sustain the defense of fraud, that the alleged representations as to Ernest Smith's indebtedness, and that appellant would incur no liability by signing the notes, were known to Ernest to be false. The precise point made is that appellant should only have been required to show that the representations were made as of a fact within his personal knowledge, and with intent that they be relied on as true, and that they were in fact false. It is well settled that *scienter* may be shown (1) by actual knowledge of the falsity of the representations; (2) if the statement was made as of the personal knowledge of the party, or in such unqualified and positive terms as to imply personal knowledge; or (3) if the circumstances were such as to make it his duty to know as to their truth or falsity. *Davis v. Central Land Co.*, 162 Iowa 269; *Tott v. Duggan*, 199 Iowa 238. The instruction did not conform to this rule. The vice of the instruction is, however, more apparent still when considered in connection with the claimed representation of Ernest, that the notes were for the accommodation of the bank, and that appellant would incur no liability by signing them. In view of the testimony tending to show that the cashier so stated, in effect, to Ernest, and suggested that he procure the appellant to execute the notes, and that Ernest repeated these statements to appellant, the jury might have found that the cashier made the statements with the fraudulent purpose of so procuring the notes, while intending to hold appellant on them, and directed Ernest to obtain them

2. FRAUD: false representations: scienter: how shown.

by such representations,—in which case, the bank would not be relieved of the consequences of the fraud by a lack of knowledge, on the part of its agent, of their falsity and of the bank's fraudulent purpose.

III.   Further complaint is made of the same instruction, in that it is said that it made the defense of fraud in the inception of the notes depend upon proof of a conspiracy between

*3. Bills and notes: principal and agent: conspiracy: holdership in due course.*   Ernest and the bank, or the agency of Ernest for the bank in procuring the notes. If either conspiracy or agency were shown, and the notes were procured by fraudulent representations of Ernest, the fraud was the fraud of the bank, and the defense was complete. But if the notes were procured by fraud of Ernest, although he was not acting for the bank, either as agent or in pursuance of a conspiracy, this would be a good defense against the bank, a transferee of the notes, unless it was a holder in due course. Section 9519, Code of 1924. If the evidence failed to establish either agency or conspiracy, and, consequently the bank was not a party to the fraud, yet, if fraud of Ernest, the payee, in procuring the notes was shown, the burden was on the bank to establish that it was a holder in due course, before it could recover. This distinction was preserved in the instruction. It said, in substance, that, if it was found there was a conspiracy or prearrangement by which Ernest acted as the agent of the bank in procuring the notes and in making the alleged representations, then the representations, if made, were the act of the bank, and it was not a holder in due course. It further said, with no reference to the question of conspiracy or agency, that, if Ernest made the representations claimed, and they were false and known to him to be false, and were relied upon by appellant, the appellant was entitled to a verdict, unless the bank was an innocent purchaser and holder of the notes. In another instruction it was said, in substance, that, if the fraud alleged was established, but if it was the fraud of Ernest Smith alone, the plaintiff could not recover, unless it was found that the plaintiff was a holder in due course of the notes. There was no prejudice at this point.

IV.   Complaint is made of another instruction, because it

is said it required a finding that the bank authorized Ernest to make the alleged false representations, before it would be bound

**4. PRINCIPAL AND AGENT: authority of agent: accepting benefit of unauthorized fraud.** thereby, and ignored the rule that a principal is bound by fraudulent representations made by his agent, whether expressly authorized or not, where the principal accepts the fruits of the contract. In this connection, the appellant asked an instruction embodying the principle just stated, which was refused, and the point was not covered by the instructions given. While the instruction complained of was proper and applicable to one phase of the proof, yet, in the absence of any instruction such as was requested, the jury might well have been misled into the erroneous belief that the bank, if it authorized Ernest as its agent to procure the notes, would not be bound by representations made by him, unless they were expressly authorized. That this is not the law is well settled. Where a recovery is sought upon a contract which it is claimed was procured by fraudulent representations of the agent of the plaintiff, it is not necessary to show that the agent had authority from the plaintiff to make the representations. *Providence Jewelry Co. v. Fessler & Sons,* 145 Iowa 74; *Houge v. St. Paul F. & M. Ins. Co.,* 174 Iowa 607;

**5. TRIAL: instructions: requests: improper rejection because faulty.** 2 Corpus Juris 879. The principal cannot accept the fruits of the agent's acts without assuming responsibility for the acts of the agent in carrying out the business of the agency. Though we do not express approval of the requested instruction in all respects, the rule referred to and as embodied in it, should have been given.

V. The court instructed that the notes sued on were negotiable; and of this appellant complains. The notes contained a provision as follows:

"Should suit be commenced for the collection of this note I agree to pay an attorney's fee of 10 per cent whether it goes to judgment or not, and holder may sell at public or private

**6. BILLS AND NOTES: negotiability: authority to sell collateral.** sale, without notice, any and all collaterals held as security for this note at any time and credit the proceeds thereof on the note, or collect collaterals by law, and apply proceeds as aforesaid."

It is contended that this provision authorized the holder to sell collaterals held as security, and apply the proceeds thereon, before the maturity of the note; and that thereby the amount payable was made uncertain. Appellant relies upon the case of *Smith v. Marland,* 59 Iowa 645, where the note expressly provided that the payee or his indorsee had full power to declare the note due and take full possession of property pledged for its payment at any time they might deem themselves insecure, even before the maturity of the note, and sell the same. In the case of *Bank of Carroll v. Taylor,* 67 Iowa 572, where the note provided that certain personal property was pledged for its payment on or before maturity, and that, in case of failure to pay the amount due at maturity, or whenever the holder might deem himself insecure, then he might take the property and sell the same, the case of *Smith v. Marland* was distinguished; and it was held that the note gave no power of sale before maturity, and there was no uncertainty as to the amount to be recovered at maturity, and the note was negotiable. See, also, *Koster v. Seney,* 100 Iowa 558. So, too, in the notes in question, it is only in the event that suit is commenced for the collection of the notes that authority is given to sell the collateral. Suit could only be commenced after the maturity of the notes on the date named therein, or under an acceleration clause in the note. There is no contention that the provision of the notes accelerating their maturity upon default of the maker in certain respects affected their negotiability. *Des Moines Sav. Bank v. Arthur,* 163 Iowa 205. The court properly instructed the jury that the notes were negotiable.

VI. The evidence showed that the bank held a third mortgage on land belonging to Ernest Smith, securing notes amounting to $8,000, and the note of J. M. Smith for $1,000, payable to Ernest and indorsed to the bank. In consideration of the cancellation of this third mortgage, and the surrender of the notes secured thereby and the note of J. M. Smith, and the payment of certain taxes, the land was conveyed to the bank. Appellant claims that all the obligations of Ernest to the bank, including the notes in suit, upon which he was liable as indorser, were to be surrendered in consideration for the conveyance of the land; and that thereby he was discharged from

liability. The record is entirely wanting in evidence to sustain the claim. The written evidence of the transaction, a so-called "listing contract," whereby the bank gave to Ernest the right to sell the land so conveyed to the bank, specified the consideration which the bank had paid for it, as stated above. The bank also held a mortgage on the interest of Ernest in other land, to secure a note of $6,500, as collateral to the notes in suit and the above mentioned note of $1,000 of J. M. Smith. On the conveyance of the land to the bank, a credit of $1,000 was indorsed on the note for $6,500. Ernest Smith testified that the officers of the bank did not say that the two notes of appellant would be surrendered if he made a deed to the farm. We do not understand counsel to claim, and the evidence does not tend to show, that the indebtedness of $8,000 secured by the mortgage for that amount included the notes in question or the debt evidenced by them. As has been said, Ernest Smith was given credit on open account for the face of the original notes of appellant when he transferred them to the bank. A portion of this he checked out, to apply on his obligations to the appellee bank; a portion was used to pay obligations of his to other banks; and the rest was used for his own purposes. There was no error in withdrawing from the consideration of the jury the claim that appellant was released, or the debt paid, by the conveyance of the land by Ernest to the bank.

For the errors pointed out, the judgment is reversed and the cause remanded.—*Reversed and remanded.*

Faville, C. J., and Stevens and De Graff, JJ., concur.