A. E. LINDQUIST et al., Appellants, v. INDUSTRIAL SAVINGS BANK OF DAVENPORT et al., Appellees.

NOVEMBER 13, 1928.

*John C. Higgins*, for appellants.

*Chamberlin & Chamberlin*, for appellee.

ALBERT, J.—I. The fact situation is not seriously in dispute.

The Miller-Toher Auto Company was a local dealer in automobiles. For convenience, this concern will be referred to hereinafter as "The Company."

Early in the year 1924, The Company was in financial difficulties. They had outstanding indebtedness to the bank of about $5,000, secured by a chattel mortgage on secondhand automobiles. They also were unable to meet their local bills, such as rent, light, heat, water, telephone, etc. They were local representatives of the Chandler-Cleveland Motor Corporation, manufacturers of automobiles. This latter concern had forwarded to The Company a carload of automobiles, for which they were

unable to pay. The representative of the manufacturer came to investigate the financial condition of The Company, and took the matter up with the bank, proposing that the bank should loan to The Company $1,000, which the bank agreed to do, provided that security was procured on the note therefor. At this point, there is a dispute in the evidence; but we are satisfied that the preponderance of the evidence shows that, at the time these plaintiffs, Lindquist and Davidson, signed said note with The Company, it was understood by all the parties, including the bank, that the $1,000 represented by the note was to be used by The Company in payment of incidental indebtedness, and it was specifically agreed that the bank was not to use any of this money to apply on the indebtedness then owed by The Company to the bank. Plaintiffs signed the note for $1,000 to the bank, as surety for The Company, and the bank promptly used $500 thereof in payment of the indebtedness then owed to the bank. The note was also signed by a Mrs. Ryan, as surety with the plaintiffs. The note was executed on May 1, 1924, and when it became due, in October following, a new note was executed by The Company, signed by Lindquist and Davidson, as sureties.; and all parties, including the bank, agreed that it was also to be signed by Mrs. Ryan. The parties dispute the question as to who was to secure Mrs. Ryan's signature, but suffice it to say, Mrs. Ryan never signed the note. One of the officers of the bank testified that the bank finally decided to accept the second note without Mrs. Ryan's signature. This, however, is specifically denied by both Lindquist and Davidson. Later, the bank was in financial distress, and these sureties insisted that it should not hold both notes; whereupon the bank returned the first note referred to, and testified that it considered the same paid. It, however, took a receipt from the sureties for such note, and in its counterclaim in this action, sets up both notes, and asks judgment for $1,000 and interest, etc.

The court, under the evidence, would have been warranted in finding that the second note was not in law delivered, or was not a completed instrument, because of the lack of Mrs. Ryan's signature; but even though it held otherwise, the fact alone that it was a renewal of the earlier indebtedness, in the absence of a new and independent consideration, still left the matter open to all defenses which might be used as against the original note.

As between the original parties, all defenses are available. *Anthon State Bank v. Bernard*, 194 Iowa 1090, 1091.; *Farmers & Merch. Sav. Bank v. Jones*, 196 Iowa 1071. This doctrine is somewhat modified in a certain line of cases illustrated by *Commercial State Bank v. Beers*, 199 Iowa 864.

II. We then have left the question whether or not, under the facts recited, the plaintiffs, Lindquist and Davidson, were released as sureties.

In *Crossley v. Stanley*, 112 Iowa 24, we laid down the rule governing this question, as follows:

"That a surety may stipulate for the particular use of a note as a condition to signing it is settled by the decisions. This condition may be material or immaterial, and no person who takes it with knowledge can acquire title as against him in violation of the terms imposed. The surety may insist on the strict terms of his agreement; and, if material alteration is made without his consent, notwithstanding it inure to his benefit, he will be discharged. *Stillman v. Wickham*, 106 Iowa 597. As said by Earle, J., in *Benjamin v. Rogers*, 126 N. Y. App. 60 (26 N. E. Rep. 970) : 'A surety has the right always to impose any limit he chooses to his liability. He may always fix the precise terms upon which he is willing to become a surety, no matter whether the terms seem to be material or immaterial. By imposing them, he makes them material, and one who takes his contract with knowledge of the limitations cannot enforce it against him. The general rule as to a surety is that he is not to be bound beyond the plain terms of his contract, and it is not sufficient to make him liable that he may sustain no injury by a change in the contract.' As directly in point, see *Bank v. Dunn*, 151 Pa. Sup. 228 (25 Atl. Rep. 80) ; *Johnston v. May*, 76 Ind. 293 ; *Bank v. Ewing*, 131 N. Y. App. 506 (30 N. E. Rep. 501) ; *Bank v. Ayres*, 16 Ohio 283. In *Gage v. Sharp*, 24 Iowa 15, and *Laub v. Rudd*, 37 Iowa 619, the holders were held to have taken without notice. But, aside from this, it is manifest that the sureties had an interest in the use of the money as proposed. The stored wheat, if paid for, would have become an asset out of which the note might in the future be paid, while nothing could be anticipated from the satisfaction of the overdraft. Again, had the money been devoted to the purposes intended, Hughes would not have been left empty-handed at the time of Reeve's

death, in June of that year, but would have had funds with which to carry on his business, as was intended, and the opportunity to acquire means from which to satisfy the note. These sureties had the undoubted right to stipulate for the application of the proceeds of the note to the purposes intended. The representations of Hughes, with their response by signing in reliance thereon, amounted to such an agreement. As Reeve had full knowledge of all this, he took the note thus limited, and by diverting a part of the proceeds to another purpose,—i. e. the payment of the overdraft,—without their consent, released them from liability.''

Following the rule specified above, we are satisfied that the bank, by misapplication or misappropriation of this fund which it had specifically agreed was to be used for purposes other than the payment of its own pre-existing indebtedness, released the sureties, and the district court should have so held.—*Reversed.*

STEVENS, C. J., and DE GRAFF, MORLING, and WAGNER, JJ., concur.