A. BAUMCHEN, Appellee, v. THOMAS DONAHOE et al., Appellants.

No. 40946.

MAY 13, 1932.

REHEARING DENIED DECEMBER 15, 1932.

Price & Burnquist, for appellee.

D. M. Kelleher and Richard F. Mitchell, for appellants.

DE GRAFF, J.—The State Bank of Clare was in financial distress in the year 1924. The State Banking Department had ordered a one hundred per cent assessment on the stock. The defendant Thomas Donahoe was president of the bank and owned forty-five shares of its capital stock; the defendant Griffin was vice-president and owned five shares; and the defendant Collins was cashier and owned fifteen shares. These three defendants were also liable on a written bank guaranty of $23,800.

They reached the conclusion that it would be necessary for them to get in some additional capital, and to that end, the defendants Collins and Griffin, with the knowledge of the defendant Donahoe, began to solicit people as prospective purchasers of bank stock. The defendants Collins and Griffin, without any invitation from the plaintiff, called at the plaintiff's home in March of 1925, and told him of a new bank that was to be organized, if sufficient capital and surplus could be secured, and asked the plaintiff to become a subscriber and a stockholder in the proposed new bank. At first, the plaintiff said he did not want any bank stock. Collins and Griffin impressed upon him the necessity of having a bank in the community, and finally, in response to their solicitations, he advised them that he would buy some stock, if he had the money to pay for it, but that he had no cash on hand. Collins then told the plaintiff that a meeting was to be held the next evening and asked the plaintiff to attend, and said that they and the defendant Don-

ahoe would explain everything, as it "was to be," at the meeting. Thereafter, the defendant Collins called the plaintiff over the telephone and requested the plaintiff's presence at the meeting, and in response thereto, the plaintiff attended.

Several persons made talks at this meeting, some of whom the plaintiff knew and some of whom he did not know. The idea was advanced by some that the Bank of Clare would be reorganized instead of organizing a new bank, but that in such case, nothing but one hundred per cent good paper would be taken into the reorganized bank and all of the doubtful and questionable paper would be eliminated.

All of the defendants were present at the meeting and the defendant Donahoe made a talk in which he said that all the questionable paper,—that is, all that was not one hundred per cent good,—had been eliminated, and that a new bank was being organized, but inasmuch as the old bank had never been closed, the new bank or reorganized bank would retain the name of the old bank and continue to transact business under that name. He further said that everything had been taken out and that it was all clear except $100 or such a matter. Griffin and Collins were both present at that time.

The plaintiff first applied for seven shares, but thereafter, being importuned by the defendant Donahoe, applied for one more share, making his total subscription eight shares, for which he paid $960. He did not have the money to pay for the shares, so Collins made out a note, payable to Griffin, for the amount of the purchase price, and the plaintiff signed it and afterwards paid it.

When the reorganization of the bank was completed, the defendants were released from their guaranty of $23,800, and Donahoe testified that one of his main interests in getting the reorganization through was to secure a release from the written guaranty.

The plaintiff discovered, sometime in 1926, that the bank was in trouble again. He made inquiry of the officers and directors to ascertain the cause and learned from them, for the first time, that a large amount of the questionable paper held by the old bank was carried as assets of the reorganized bank; that a considerable amount of real estate was carried by the bank in its assets; and that the notes were not collectible and the real estate of slight value. If he had known that these notes were to be kept in the reorganized bank and not eliminated, and had he known that the real estate was to be

retained as assets of the reorganized bank, he would not have subscribed and paid for any of the stock.

After the bank was reorganized, Collins and Donahoe continued in the active management of the reorganized bank, but because of the old paper taken into the reorganized bank and because of the real estate retained by it, the assets of the reorganized bank soon depreciated to such an extent that the banking department closed its doors, and the plaintiff was compelled to pay an assessment of $800. It is the plaintiff's claim that the defendants, by concerted action, deceived him to his damage, in the amount he paid for the stock and the assessment paid thereon; and for the alleged fraud plaintiff brings this action to recover the aforesaid amounts with interest.

The evidence is in conflict. Denials of having made any representations at all are in the record. Plaintiff's evidence is corroborated by other witnesses. In spite of these affirmations and denials, the picture is fairly well presented, and the jury would be justified in finding, from the evidence, what we have hereinbefore set out. If, therefore, the facts, as stated, constitute actionable fraud, and no other errors appear, we are bound by the verdict returned by the fact-finding body.

■■ When the president, vice-president and cashier of a failing bank induce one to buy stock for its reorganization, first assuring the prospect that all questionable paper will be eliminated, and later on, stating that all the questionable paper in the bank has been eliminated, and these representations and statements are relied upon by a purchaser, there can be no question but that actionable fraud has been practiced, if the representations are false, and as a result of which loss and damage to the purchaser occur.

Motions for directed verdict were timely made and by the court overruled. Motions for new trial and exception to the instructions of the court were likewise made and overruled. Twenty-two assignments of error are presented for consideration. Analyzed, they resolve themselves into five in number, as follows: (1) Plaintiff, because of his own knowledge as to the condition of the bank, cannot claim to have relied upon the representations of the defendants; (2) a misjoinder of parties and causes of action; (3) no competent evidence of the measure of damage; (4) lack of knowledge of value of the bank stock on the part of the defendants; and (5) failure of the court to distinguish material facts from mere promises.

The evidence is in conflict as to what the plaintiff knew concerning the condition of the bank. He claims to have had no knowledge of it, except that he had heard some rumors. This, however, would not prevent him from relying upon the representations made to him by the defendants. It was immaterial to him what the condition of the bank was if, as a matter of fact, when he subscribed for stock in the new bank or the reorganized bank, all of the objectionable paper, which made the old bank insolvent, had been eliminated therefrom and only one hundred per cent good paper included within its assets. The plaintiff believed that he was subscribing for stock in a reorganized bank which was explained to him to be, for all practical purposes, the same as a new bank, except that it was to transact business under the name of the failing institution. Doubtless, the jury found it difficult to believe that an ordinarily intelligent man, knowing that the institution in which he was about to invest his money would be insolvent because of worthless paper in its assets, would still obligate himself not only for the purchase price of the stock, but also to the payment of an assessment of one hundred per cent of its value within a short time thereafter.

Of course, if the plaintiff did have full information of the condition of the State Bank of Clare, he could not claim that the representations of others misled him. That situation is not here. in view of the verdict of the jury. The first representations to the plaintiff were that a new bank was being organized, and when it came time for him to subscribe, he was told, as a present existing fact, that the bank was being reorganized, but that all of the objectionable paper had been eliminated therefrom and that what was left was one hundred per cent good.

The claim that there is a misjoinder of parties and of causes of action is not sustained by the record. The petition alleges, in specific terms, that the defendants Griffin and Collins, with knowledge and to further the purpose of themselves and the defendant Donahoe, came to plaintiff and made certain representations. There is, therefore, an allegation which avers that the defendants acted concertedly and for the purpose of furthering their own interests and the interests of each in certain respects. True, the words "conspiracy" or "conspirators" are not used. There is no provision of the law which requires the use of either term when a civil action is brought, based on concerted activities of others. There may be

a joint liability existing where the wrong is done by concerted action and common intent and purpose without proof of conspiracy. See Faust v. Parker, 204 Iowa 297, 1. c. 306; Young v. Gormley, 119 Iowa 546. There is evidence in the record, undisputed, that Collins and Griffin, with the knowledge of Donahoe and in accordance with plans they had made, went out to solicit parties to buy bank stock, and Donahoe himself admits that his main interest in having the new stock sold was to become released from the bank guaranty hereinbefore referred to. The fact that he told the plaintiff at the meeting in the bank that all the questionable paper had been eliminated and none would be taken into the new bank constitutes a participation on his part in the concerted action of all three, which makes him equally liable with Collins and Griffin.

The question is raised by appellants that there is no competent evidence in the record of the proper measure of damage. It is the attempt of all courts, where damage has been occasioned by fraud, to make the sufferer whole, provided the one defrauded acts within reasonable time, and not speculate on what the efflux of time may bring about. The undisputed record in this case shows that the plaintiff knew nothing concerning the affairs of the bank until more than a year after he had made the purchase of the stock; that he then found out by chance, seeing a meeting of the board of directors in the bank one night; that he inquired whether or not the bank was in trouble, and was advised that it was, and that the trouble was due to the fact that the objectionable paper, all of which was represented to him to have been eliminated from the bank, was the thing which was making the bank insolvent. If, as a matter of fact, the objectionable paper had not been eliminated from the bank, and was the cause of the bank's insolvency, then the bank stock was worthless at the time it was sold to the plaintiff, so that the measure of damages was at least the purchase price of the bank stock. If the presence of the questionable paper in the bank's assets was what caused the necessity for an $800 assessment against the plaintiff, then his measure of damage was not only the purchase price of the bank stock, but the additional liability which he assumed by becoming a stockholder of the bank, to wit, the $800 assessment. The record is clear that the plaintiff believed that the bank was being reorganized and that it would have a capital of $25,000 and a surplus of $5,000, with no depreciation thereof by any questionable paper. It is undisputed in the record that in this he was deceived,

and that the presence of the questionable paper alone resulted in the bank's failure. The measure, therefore, of the plaintiff's damage was the purchase price of the stock, plus the amount of whatever obligation was assumed by him which was reasonably certain to arise. The defendants offered no evidence to contradict that produced and offered by the plaintiff with respect to the value of the bank stock. The foreclosure of the questionable paper did not in any wise help the bank, for it merely substituted real estate for the questionable paper, and in each instance, brought a loss to the bank of many thousands of dollars.

It is urged that there is no evidence in the record that the defendants had any knowledge of the value of the bank stock, nor any knowledge that the representations which they did make were not true. The record does not bear out this claim. All of the defendants were officers of the bank and some of them had been in the banking business for many years. They were active in its management and control. They knew the character of the assets of the bank and they knew its liabilities. They knew that it was necessary to get new money, if the old bank was to remain open, and they knew that this new money must be used in place of the doubtful assets of the bank. It was merely a matter of computation, if one were possessed of sufficient knowledge and skill to make it. Doubtless this computation had been made for them by an emissary, who was familiar with such conditions and able to ascertain the true facts for them. If the facts were as the record discloses, there is no question but that any banker, under such circumstances, would realize that the stock they were attempting to sell the plaintiff had no value and carried with it the potential possibility of a stock assessment. Under such circumstances, the defendants will not be permitted to say that they had no knowledge of the facts which they represented did in fact exist. We have many times held that the officers of a corporation will be presumed to know its financial condition. Sioux City Tire & Mfg. Co v. Harris, (Iowa) 190 N. W. 142 (not officially reported) ; Hubbard v. Weare, 79 Iowa 678, l. c. 687; Farnsworth v. Muscatine Produce & Pure Ice Co., 161 Iowa 170, l. c. 179.

It is alleged by the appellants that what they said to the plaintiff, upon which the plaintiff based his actions, was mere expression of opinion, and that no actionable fraud can be based thereon. It is true that some expressions of opinion were given. It is

likewise true that statements of present existing facts were made to the plaintiff. It is the law, however, that mere expressions of opinion may sometimes amount to representations of fact, when made under circumstances such as the record discloses here. There is no question but that the statements that were made by the defendants were made for the purpose of inducing the plaintiff to act, and there is no question but that some of them were false, and there is no question that the plaintiff, relying upon the representations made to him, acted to his damage. As we have heretofore said, the defendants cannot be heard to say that they had no knowledge of the falsity of the representations made. We think, therefore, that there is no merit in the claim that plaintiff is attempting to rely solely on expressions of opinion. As we said in Faust v. Parker, 204 Iowa 297, and cases therein cited:

"Another rule equally applicable here is that, where one assumes to act as a disinterested adviser, and makes statements either of fact or of opinion, having in fact a secret interest in the transaction, such representations are actionable." (Citing cases.)

The trial court in one of the instructions (XIX) to the jury said that:

"If you find from the evidence, as guided by these instructions, that the plaintiff is entitled to recover, the amount of his recovery will be $960 [purchase price of the stock] with interest at 6% from May 1, 1925, and if you further find that the plaintiff Baumchen had to pay the stock assessment of $800 as a direct and proximate result of his purchase of the stock, and that there was no cause intervening between the time of the purchase of the stock by plaintiff and the time of the assessment that was the cause of the assessment, then, in that event, the plaintiff would be entitled to recover the additional sum of $800 plus interest at the rate of 6% from November 1, 1927."

The court in said instruction also told the jury that before the plaintiff would be entitled to recover in any event the sum of $800 paid for the assessment, he must prove by a preponderance of the evidence that the assessment was directly caused by the condition of the bank at the time he purchased said stock, and was not caused by anything that took place in the intervening time between the time of the purchase of said stock and the time that the assessment was levied against him, "and if you find for the plaintiff, you will

determine the amount of the damage that he is entitled to, and this amount will be the amount of your verdict that you will render in favor of the plaintiff as against the defendants, or as against any one or more of them, as you will decide from the evidence as guided by the instructions." The evidence fully warranted the giving of this instruction.

The jury returned a verdict in favor of the plaintiff against all of the defendants and assessed the amount of plaintiff's recovery in the sum of $1,760. We do not find in any of our decisions similar or analogous facts, as disclosed in the instant case, involving the measure of damage applicable to statutory capital bank stock assessment.

In the case of Lake v. Western Silo Company, 177 Iowa 735, the action sought to recover the amount paid by plaintiff for a silo. In that case the court instructed that the plaintiff might recover, not only the purchase price paid, but also the expenses incurred by him in attempting to assemble the silo. It is said, l. c. 739:

"As plaintiff did not know the number of staves required, until he came to assemble the silo, and, as an ordinarily prudent man, was not bound to make this discovery, we think the trial court properly instructed that plaintiff might recover, not only the money paid, but the expense he was put to in attempting to erect the structure. (Citing cases)."

We have examined carefully the instructions in the case at bar. It is true that in the statement of the issues, the court did adopt, in rather full detail, the allegations of the plaintiff's petition; but in cases of this kind, where the issues consist of certain specific representations made, it is almost incumbent upon the court to set out the issues fully, and we see no error in the manner in which the court has stated the issues. McDonald v. Robinson, 207 Iowa 1293, l. c. 1299. The exception to the other instructions of the court that they are conflicting and confusing is not well founded. They follow the issues and the proof and correctly place the burden of proof upon the plaintiff. A jury question was presented. The jury, under proper instructions, has passed upon the facts and determined them in favor of the appellee, under evidence properly admitted by the court. We see no occasion to disturb the verdict. The judgment of the trial court is, therefore,—Affirmed.

WAGNER, C. J., and STEVENS, ALBERT, and FAVILLE, JJ., concur.