**FIRST NATIONAL BANK IN LENOX, Appellant,**

v.

**Wyn BROWN and Merle Brown, Appellees.**

**No. 53956.**

Supreme Court of Iowa.

Nov. 10, 1970.

Richard L. Wilson, Lenox, and W. W. Reynoldson, of Reynoldson & Reynoldson, Osceola, for appellant.

Donald D. Mullin, of Mullin, Mullin, McLaughlin & Harvey, Creston, for appellees.

RAWLINGS, Justice.

Action by plaintiff bank on a promissory note. Defendants answered alleging fraud in the inducement. Trial court found for defendants. Plaintiff appeals. We affirm.

The factual situation is complex and will be referred to only in so far as deemed material to a determination of this appeal.

Plaintiff is payee of an unsecured $4500 promissory note admittedly executed by Wyn Brown January 17, 1967, later cosigned by his father, Merle Brown. July 17, 1967, this instrument matured. July 18, 1967, Wyn Brown executed a $4500 renewal note, maturing January 18, 1968, similarly cosigned. It is the subject of this action.

At all times concerned Dean Evans operated a filling station business known as "Evans' 66 Service" and an adjoining snack shop in Lenox. He did not own the real estate or improvements thereon. In February 1964, plaintiff bank, having loaned money to Evans, took a chattel mortgage on all the business equipment. Evans later refinanced his indebtedness, the bank taking additional and renewal security instruments in November 1966, April 20, 1967, and July 29, 1967. The mortgage, and financing statements on all security interests, were recorded in the county recorder's office. The amount owing by Evans was $12,265 when the loan to Browns was first effected.

Prior to the instant events, Evans began to encounter difficulty in meeting his obligations to plaintiff bank and others. Ralph Zabel, bank president, became aware of these adversities and apparent deterioration of Evans' businesses. Zabel suggested to Evans it might be wise to sell.

In late 1966 Wyn Brown was one of Evans' customers. Evans proposed a sale of the businesses to Brown. When the latter evidenced an interest in buying, Evans suggested Brown contact Mr. Zabel about a loan, and advised Zabel regarding Brown's interest.

Prior to this time, neither defendant had any dealings or contact with plaintiff bank.

In late December 1966, Wyn Brown and his mother conferred with Zabel regarding Evans' operations and the possibility of borrowing from the bank. Responding to inquiries, Zabel said they were going businesses, he thought Wyn should be able to do all right in them, and the bank would be willing to make a loan, provided the note was cosigned by Merle Brown, a man of substantial means. No mention was made of encumbrances held by the bank.

January 17, 1967, Wyn Brown executed the original note. Again, the bank's security was not mentioned. Shortly thereafter Merle Brown cosigned the note. Then also there was no reference to existing bank held liens.

The record indicates Wyn Brown, at that time, intended to acquire, and Evans to sell, only a half interest in the businesses. Apparently this transaction was never actually formalized.

Mr. Zabel's testimony discloses he at no time intended to let the Brown note proceeds out of the bank without at least a portion thereof being applied to Evans' indebtedness. January 18, 1967, from the $4500 loaned to Wyn Brown, $500 was, by agreement of Brown and Evans, deposited in the "Evans' 66 Service" operating account. The remaining $4000 was credited to Evans' checking account, from which $2,467.14 was immediately applied against Evans' obligation to the bank, and interest past due.

In April and July of 1967, when plaintiff renewed its security interest in the Evans businesses, no notification thereof was given either defendant.

Also, when the Brown note was renewed in July 1967, no mention was made of the bank's interest in the service station and snack bar.

Shortly after renewal of his note, Wyn Brown discovered the encumbrances. Evans was promptly informed by Brown he would not longer have anything to do with the businesses. Thereupon Brown left.

In December 1967, at the instance of the bank examiner, Evans' remaining indebtedness was "charged off" the books of plaintiff bank.

Defendants' renewal note came due in January 1968. It was not paid. October 1, 1968, plaintiff initiated this action.

Sometime during November 1968, plaintiff caused the business assets, covered by its security interests, to be sold at private sale, and the proceeds thereof applied to reduce Evans' indebtedness. No notice of this action was given these defendants.

Zabel testified, in effect, if Wyn Brown had taken the action Zabel understood necessary to complete the contract which Brown presumably had with Evans for purchase of the businesses, plaintiff would have released its security interest therein except for the accounts receivable.

These and other relevant facts will be later considered as they relate to issues involved.

Propositions relied on by plaintiff bank for reversal are, in substance, (1) absence of relationship creating any duty on its part to disclose existence of self-held encumbrances; (2) they were of public record thereby imparting notice thereof to defendants, (3) existence of a duty on plaintiff's part not to divulge its customer affairs; and (4) absence of material misrepresentation constituting fraud in the inducement.

■ I. Though commenced as a law action, this case was tried in equity, with the consent of all parties. As tried, it is considered on appeal. Bjork v. Dairyland Insurance Co., 174 N.W.2d 379, 382 (Iowa). Thus our review is de novo and equity standards apply.

II. Proof essential to establish fraud in law and in equity is distinguishable.

In law actions there must ordinarily be proved, (1) representation; (2) falsity; (3) materiality; (4) scienter; (5) intent to deceive; (6) reliance; (7) resulting injury and damage. Hall v. Wright, 261 Iowa 758, 766, 156 N.W.2d 661.

The rules are less strict, however, in equity. Fraud may there be constructed from circumstances, whereas the law must find it as a fact. Furthermore, equity may grant relief absent a showing of scienter or pecuniary damage. See Detrick v. Aetna Casualty and Surety Co., 261 Iowa 1246, 1255–1257, 158 N.W.2d 99; Leach v. Central Trust Company, 203 Iowa 1060, 1063, 213 N.W. 777, 57 A.L.R. 1165; 37 Am.Jur.2d, Fraud and Deceit, §§ 220, 222; cf. Alpen v. Chapman, 179 N.W.2d 585, 589–590 (Iowa). But see Appleby v. Kurtz, 212 Iowa 657, 659, 237 N.W. 312.

■ III. The note involved was not transferred after made, having at all times been retained by plaintiff bank. This

being the case, no effect is given its negotiable character, and an action to secure performance of the obligation it represents is subject to any and all defenses available to a nonperforming party under the law of contracts. See The Code 1966, § 554.-3306(b); 12 Williston, Contracts, § 1486 (3rd Ed.); 10 C.J.S. Bills and Notes § 496; 11 Am.Jur.2d, Bills and Notes, §§ 1, 372, 653.

■ Further, as the note sued upon is a renewal instrument, it is subject to all defenses which would have been available to the maker had suit been brought on the original. See Decker v. Juzwik, 255 Iowa 358, 373, 121 N.W.2d 652; Lindquist v. Industrial Savings Bank of Davenport, 206 Iowa 1131, 1132, 221 N.W. 845.

■ IV. It is a well settled principle of equity that misrepresentations amounting to fraud in the inducement of a contract, whether innocent or not, give rise to a right of avoidance on the part of the defrauded party. Halpert v. Rosenthal, 267 A.2d 730, 734–735 (R.I.); 12 Williston, Contracts, § 1500 (3rd Ed.).

■ Ordinarily mere silence on the part of one party, in an arms length transaction, as to material facts discoverable by the other does not serve to create actionable fraud. 12 Williston, Contracts, § 1497 (3rd Ed.). This is not the case, however, where there exists a relationship of trust or confidence, and the trusted party has superior knowledge of the facts. See Loghry v. Capel, 257 Iowa 285, 289, 132 N.W.2d 417; Smith v. New York Life Insurance Company, 208 F.Supp. 240, 243 (D.C.Iowa); 12 Williston, Contracts, § 1497 (3rd Ed.). In the latter situation the superior party has a duty to disclose all material facts of which he is aware, or at least those favorable to his own position and adverse to the other. See Loghry v. Capel, supra; Smith v. New York Life Insurance Company, supra; 12 Williston, Contracts, §§ 1497, 1515B (3rd Ed.); Restatement, Contracts, §§ 471(c), 472.

■ The record clearly discloses Zabel so comported himself that he knew or should have known from Wyn Brown's questions and reaction that the latter trusted him implicitly. Furthermore, Zabel neither said nor did one thing to alert defendants to the true situation, and by so failing purported to act solely for the Browns' interests. See Commercial Credit Plan, Inc. v. Beebe, 123 Vt. 317, 187 A.2d 502; Annot. 48 A.L.R. 528, 540. It is also manifest that Zabel, and in turn plaintiff bank, had far more familiarity with the operative facts of the transaction than did defendants. Thus, there was imposed upon plaintiff an unfulfilled duty of disclosure. *Cf.* First National Bank of Armstrong v. Smith, 199 Iowa 1277, 1283, 203 N.W. 802.

It is thus apparent, silence qualified as a misrepresentation.

V. Unavoidably involved in the matter of representations made or facts concealed is the element of materiality.

It is well established, where one has acted in reliance upon a representation made by another, of such nature as to influence the "victim" to enter into a transaction, it is material. Rosenberg v. Mississippi Valley Constr. Co., 252 Iowa 483, 486, 106 N.W.2d 78.

Here the representations involved were, in effect, plaintiff bank knew of no relevant facts regarding the proposed investment adverse to the Browns' interests, and favorable to itself. Defendants testified they relied on such representations. Trial court so found and we agree.

Under existing circumstances the deceptive representations were material.

VI. Testimony by the Browns also discloses the investment would not have been made had they known of the encumbrances.

The fact that Zabel made the loan knowing the use to which it would be put, and existence of the bank's involvement, amounted to an affirmative representation

by Zabel he knew of nothing regarding the Evans businesses adverse to their interests. See Commercial Credit Plan, Inc. v. Beebe, supra; Hutchings v. Tipsword, 363 S.W.2d 40, 45 (Mo.App.). This being the case, and the Browns having acted as plaintiff must have anticipated, it is presumed they were misled by Zabel's representations. See Restatement, Contracts, § 479. This presumption was not persuasively rebutted.

VII. Pursuing the subject further, plaintiff argues Zabel's statements and actions were mere opinions expressed, thus could not be the basis of actionable fraud. This, as an abstract proposition, is per se correct. 37 C.J.S. Fraud § 10 (a). We do not agree, however, that the acts and statements of Zabel may be so characterized. But, even if they could, actionable fraud still resulted. As stated in Commercial Sav. Bank of Carroll v. Kietges, 206 Iowa 90, 96, 219 N.W. 44, 47:

> [O]ne may not be relieved from responsibility for fraud because in making a misrepresentation, which would otherwise be fraudulent, he has chosen to make it in the form of an opinion. If the representation, instead of standing alone or by itself as an opinion, which under the circumstances must be understood to be such, is intended to be an affirmation of fact and to be so understood, and the circumstances are such that it may properly be and is so accepted, the other essential elements of fraud being present, it will sustain the charge of fraud.

*Accord,* Baumchen v. Donahoe, 215 Iowa 512, 518–519, 242 N.W. 533; see 37 Am. Jur.2d, Fraud and Deceit, § 53. Such is the situation under the facts here disclosed.

■ VIII. As aforesaid plaintiff also contends it could not reveal the Evans encumbrance because it was under a duty not to divulge customers' affairs, and disclosure would have violated that obligation. This argument is without merit. True, the duty of which plaintiff speaks does exist. On the other hand, it runs to confidential matters alone, known only to the bank and customer involved. *Cf.* 10 Am.Jur.2d, Banks, § 332. And, according to plaintiff's own evidence the encumbrances held by it on Evans' personalty were of public record so could not be classified as private or personal.

IX. Another closely related argument advanced by plaintiff is that recordation of the encumbrances served to give defendants constructive notice of their existence, and they were therefore not deceived or misled by what Zabel said or did.

Admittedly one having knowledge of the true facts cannot have relief for fraud or misrepresentation. See 37 Am.Jur.2d, Fraud and Deceit, § 226. And for most purposes the public recordation of an encumbrance constitutes constructive notice of its existence. See Janssen v. North Iowa Conf. Pen., Inc. of Meth. Church, 166 N.W.2d 901, 908–909 (Iowa).

Here, however, the bank, by agreeing to make the loan without mention of its liens, knowing the purpose for which the funds were sought, and being then aware of existing encumbrances held by it on the property being purchased, inferentially induced defendants to forego making the investigation necessary to acquire knowledge of the true facts.

In this regard it is generally understood, if a deceived party relies upon fraudulent misrepresentations of another his claim of fraud is not barred merely because he has not used due diligence to discover the true facts, even though they may be readily ascertained from public records. See Kannavos v. Annino, 247 N.E.2d 708, 711–712 (Mass.); See also 37 Am.Jur.2d, Fraud and Deceit, §§ 242–258 and 263.

Furthermore, where, as in this case, the bank held encumbrances on Evans' property, the Browns, as recipients of business transaction misrepresentations, were justified in relying thereon even though an investigation might have revealed the falsity of such representations. Spiess v. Brandt,

230 Minn. 246, 41 N.W.2d 561 (Minn.); Restatement, Torts, § 540.

This is especially true where the facts misrepresented are peculiarly within the knowledge of the one against whom the allegation of fraud is directed. Fruit Industries Research Foundation v. National Cash Register Co., 406 F.2d 546, 549 (9th Cir.).

 It therefore follows, a mere recordation of the bank-held encumbrances cannot be said to have given defendants such knowledge of existence thereof as to vitiate any liability for fraud on plaintiff's part.

X. Finally, indicative of the bank's deceptive conduct is the fact that having lured defendants into a borrowing transaction by failing to reveal its own interest in the deal it then required application of a major portion of the loan proceeds to ease its own Evans-related difficulties. In other words, the bank dealt with defendants as tools with which to alleviate the result of its own prior poor loan judgment.

Existence of plaintiff bank's lien was material to the Browns' transaction with Evans. Under the present factual situation plaintiff was duty bound to disclose them. By failing to do so it falsely represented they did not exist. Equity will not sanction such tactics.

XI. In summary we now find, plaintiff bank made a loan to defendants Brown, (1) at that time knowing the proceeds thereof were being used by them to purchase an interest in certain personalty; (2) then holding a recorded substantial encumbrance on the property so being acquired; (3) but designedly failed to reveal such facts to the borrowers prior to consummation or renewal of the loan transaction; and (4) at all times secretly intended to ameliorate its unfavorable financial position attendant upon prior improvident encumbrance dealings with Evans by effecting the loan to defendants.

In light of these conditions it follows and we now hold plaintiff bank breached a duty to defendants which amounted in equity to fraud in the inducement, giving rise to a right of avoidance on the part of defendants with regard to the action here brought against them by plaintiff. Trial court correctly so held.

Affirmed.

All Justices concur, except STUART and LeGRAND, JJ., who concur in the result.