MANSON STATE BANK, Appellee,

v.

R. C. TRIPP and Bonnie Tripp, Appellants.

No. 2–57423.

Supreme Court of Iowa.

Dec. 15, 1976.

John H. Mitchell, of Mitchell, Murray, Blackburn & Coleman, P. C., Fort Dodge, for appellants.

John H. Neiman and Thomas M. Zurek, of Neiman, Neiman, Stone & Spellman, Des Moines, for appellee.

Heard by MOORE, C. J., and RAWLINGS, LeGRAND, REYNOLDSON and HARRIS, JJ.

REYNOLDSON, Justice.

Plaintiff Manson State Bank commenced this law action to recover on an $8000 renewal note dated January 16, 1971. The makers, defendants Dr. Richard C. Tripp and his wife Bonnie Tripp, defended (and counterclaimed for $2375 principal and interest paid on the initial December 31, 1969 note for $10,000) alleging a bank employee committed fraud in the inducement of the instrument. Trial court, acting as fact finder, held defendants failed to prove fraud and ordered judgment for plaintiff. Upon defendants' appeal, we affirm.

In 1969 a Dr. C. R. Wilson of Manson and a few other persons were stockholders in Continental Corporation (an Iowa corporation) and Imperial Golf Co. (an Illinois corporation) which entities had been engaged in manufacturing and distributing golfing equipment and products. These companies were heavily indebted to the major stockholders and to other persons and institutions, including plaintiff Manson State Bank in the sum of $37,558 and Central National Bank of Des Moines for $170,000.

The plaintiff bank cut off further credit until more operating capital was furnished. Wilson and others devised a plan to form a holding corporation, Continental, Inc., to purchase all outstanding stock of Continental Corporation and Imperial Golf and provide new capital. Efforts were made to interest Fort Dodge investors, including defendant Dr. Tripp, a medical specialist who had worked with Dr. Wilson professionally.

The new incorporation contemplated 15 shareholders who would each invest $10,000. Dr. Tripp discussed this investment with other potential investors, including attorney Ralph Bastian, Dr. Killelea, Clarence Johnson and Irving Diamond. Before he went to plaintiff bank, Dr. Tripp had received and signed a copy of a preorganization subscription agreement which acknowledged receipt of pertinent information revealing the financial conditions and operations of Continental Corporation and Imperial Golf. This material was attached. It disclosed the Continental Corporation was insolvent and in fiscal year ending July 31, 1969 had a net operating loss of $54,154.

Through Dr. Wilson's prearrangement, Dr. Tripp met with vice-president Dale Rosendahl at the Manson State Bank on December 31, 1969 to negotiate a loan. He had never banked there before. Details of the ensuing conversation are unclear. Dr. Tripp testified he asked Rosendahl if "it was a good investment, or something to that effect. And as far as the reply was concerned, why I think he was more or less noncommittal other than the fact that he said something to the effect that the bank had faith in the company". At another

point in his testimony this defendant stated, "The implication was that they—that he thought it was a good investment".

Rosendahl admitted he knew Continental Corporation and Imperial Golf were indebted in the above amounts to Manson State Bank and Central National Bank but did not inform Dr. Tripp. He denied ever recommending an investment to Dr. Tripp or any other person.

Tripp signed the note, took it home for his wife to sign, then returned it by mail. He received and endorsed a money order made out to him and Continental Corporation. Tripp never received any stock certificates although he later attended organizational meetings of the new corporation and with nine others signed as surety for a $100,000 loan from First National Bank of Fort Dodge.

Evidence was introduced which tended to show plaintiff bank never received any of the Tripp loan money except that it and other investors' money could be traced to routine payments of debt installments from Continental Corporation to the bank in the amounts of $1078 and $2240.

Despite infusion of new capital, the holding corporation, Continental, Inc., went into bankruptcy in the spring of 1971. Manson State Bank was secured and received payment in full.

In appealing the adverse judgment below, defendants raise three issues which may be succinctly consolidated: did trial court err in not finding fraud in the inducement of the note?

■ I. This appeal is from a judgment rendered in a law action tried to the court. Trial court's findings of fact have the effect of a special verdict and are equivalent to a jury verdict. If supported by substantial evidence and justified as a matter of law, they are binding on us and the judgment will not be disturbed on appeal. *Manson State Bank v. Diamond,* 227 N.W.2d 195, 199 (Iowa 1975); see *Atlantic Veneer Corp. v. Sears,* 232 N.W.2d 499, 502 (Iowa 1975).

"In evaluating the sufficiency of the evidence, we view it in its light most favorable to sustaining the court's judgment. We need only consider the evidence favorable to the judgment, whether or not it is contradicted". *Grefe v. Ross,* 231 N.W.2d 863, 865 (Iowa 1975); see *Becker v. D&E Distributing Co.,* 247 N.W.2d 727 (Iowa 1976).

■ II. Where, as here, the signatures on a promissory note are admitted, the burden is on the makers to establish a defense. Section 554.3307(2), The Code. In alleging fraud in a law action these defendants shouldered an onerous burden. "Each and every one of the following elements must be established by a preponderance of the evidence that is clear, satisfactory and convincing—such as to overcome the presumption in favor of fair dealing: (1) representation, (2) falsity, (3) materiality, (4) scienter, (5) intent to deceive, (6) reliance (7) resulting injury and damage". *Hall v. Wright,* 261 Iowa 758, 766, 156 N.W.2d 661, 666 (1968). See *Grefe v. Ross,* supra, 231 N.W.2d at 864; *Wilden Clinic, Inc. v. City of Des Moines,* 229 N.W.2d 286, 292 (Iowa 1975).

III. While trial court found Rosendahl did make the statements Tripp attributed to him in the loan negotiation, defendants do not rely on them as fraud in the inducement. Rather, defendants assert the fraud occurred when the bank chose not to disclose to them the indebtedness of Continental Corporation to it and Central National Bank and the fact further credit had been cut off. This conduct, defendants argue, violates the principles we laid down in *First Nat'l Bank in Lenox v. Brown,* 181 N.W.2d 178 (Iowa 1970), and *Loghry v. Capel,* 257 Iowa 285, 132 N.W.2d 417 (1965).

*Loghry v. Capel,* supra, involving a sale of real estate and a limited rule relating to soil defects, is of doubtful precedent here. Defendant's main reliance is on the *Lenox* case, supra.

In *Lenox,* the bank was suing on a promissory note. One of the makers of the note was purchasing a service station from Evans, who was in financial difficulty. This was known to the bank, which had loaned

money to Evans and held a security interest in the station assets. Evans suggested Brown obtain a loan from the Lenox bank. The bank made the loan without advising Brown of Evans' financial condition and applied more than one-half of the loan proceeds against Evans' indebtedness. The *Lenox* court said, 181 N.W.2d at 182:

"Ordinarily mere silence on the part of one party, in an arms length transaction, as to material facts discoverable by the other does not serve to create actionable fraud. [Citation] This is not the case, however, where there exists a relationship of trust or confidence, and the trusted party has superior knowledge of the facts. [Citations] In the latter situation the superior party has a duty to disclose all material facts of which he is aware, or at least those favorable to his own position and adverse to the other."

The *Lenox* case was tried in equity. This not only affected the scope of review, it affected the quantum of proof required to prove fraud:

"The rules are less strict, however, in equity. Fraud may there be constructed from circumstances, whereas the law must find it as a fact. Furthermore, equity may grant relief absent a showing of scienter or pecuniary damage."

—181 N.W.2d at 181.

In *Lenox,* 181 N.W.2d at 182, this court found the bank's loan officer "so comported himself that he knew or should have known from Wyn Brown's questions and reaction that the latter trusted him implicitly". Here, as in *Lenox,* the bank's security interests were of record. We therefore do not confront the issue of the bank's duty of nondisclosure owed to its other customers. See *Milohnich v. First Nat'l Bank of Miami Springs,* 224 So.2d 759 (Fla.Dist.Ct.App. 1969).

■ No inference helps defendants. *Lenox* does not hold, as they seem to suggest, that a confidential relationship arises out of every bank-borrower relationship. Such a relationship is ordinarily nonexistent in such a situation, as other jurisdictions have squarely held. *Klein v. First Edina Nat'l Bank,* 293 Minn. 418, 422, 196 N.W.2d 619, 622 (1972); see Annot., Bank as Fiduciary—Duty of Disclosure, 70 A.L.R.3d 1344 (1976).

■ IV. In this case, trial court as fact finder was justified in finding no relationship of trust and confidence existed between Rosendahl and Tripp. Tripp had never done business with Rosendahl or plaintiff bank before. He had received financial statements showing the companies to be "bailed out" were in serious financial trouble. Trial court was not obligated to believe Tripp's statement he could not interpret this material. He was obviously an educated man and, according to his own financial statement furnished the bank, had invested in stocks and bonds to the extent of $100,000 before making this loan. He had talked with other persons concerning the advisability of this investment. While he testified those persons considered the proposed corporation a "good investment" he never claimed he did not know the two corporations to be taken over were in bad shape financially.

In our view, trial court rightly concluded defendants' proof did not meet their burden in this case. There is no adequate proof the bank's nondisclosure induced defendants to execute the note.

The judgment below must be affirmed.

AFFIRMED.