IN RE GUARDIANSHIP OF KENNETH J. AASHEIM et al.

JOHN CUNNINGHAM, Trustee, Appellee, v. H. C. OLSON, Guardian, Appellant.

No. 40696.

APRIL 10, 1931.

REHEARING DENIED OCTOBER 5, 1931.

Frank S. Lovrien, for appellant.

C. W. Garfield and Franklin Jaqua, for appellee.

MORLING, J.—On March 15, 1924, H. C. Olson paid interest owing by him on a mortgage on his individual property to the amount of $1214.56. He received the coupons representing the interest. The coupons were marked "paid." In the payment of this interest he used $1100 of guardianship funds for which amount, with interest, under the same date he signed individually (retaining in his own possession) a demand note payable to one of the wards. On June 2, 1924, Olson and wife executed to claimant, John Cunningham, trustee, a conveyance of a large amount of real and personal property "to secure the payment" of four classes of obligations—first a large number of particularly described obligations of H. C. Olson, second claims of depositors in a named bank as shown by the bank books, third a large number of specified promissory notes owing to various named banks, fourth rediscounts sold by the named bank to the War Finance Corporation. Priorities were established in the foregoing order. Time of payment of the obligations was to be extended for three years. It was stipulated in the conveyance:

"It is also understood that the said H. C. Olson one of the first parties, shall be given the right to use the personal property herein mortgaged if necessary to pay interest on mortgage indebtedness on the above described land to pay taxes thereon and operating and living expenses thereof and for such purpose the Trustee shall have the right in his sound discretion to release to the first party such personal property as in his sound judgment is necessary or proper for such purposes. The security afforded by this instrument shall take effect and apply at once on the execution of this instrument, but the various creditors and beneficiaries secured or intended to be secured by this instrument shall signify their acceptance * * *. It is also one of the conditions of this instrument that the creditors and beneficiaries who accept its provisions as hereinbefore provided shall release the undersigned from any and all personal liability after the security herein given is exhausted, and the first parties hereby represent that substantially all of their non-exempt property, both real and personal is conveyed and covered by this instrument."

The trustee John Cunningham did not personally take possession of the trust property but left it in Olson's hands for ad-

ministration. Olson managed the property, sold personalty and received the income. He opened a bank account in which he appears to have deposited the proceeds and income of the property and from which he appears to have drawn for his living and other personal expenditures and inferentially for a time for payment of interest and taxes. He made no accounting and no payments to trustee Cunningham, who testifies with regard to this and other conveyances to him in trust by different parties:

"I did mention to different ones I think at different times that I didn't know anything about the business and I thought there ought to be some kind of reports; that if they used it all up, according to the terms of the trust, there was nothing to come to me, but if they didn't, there ought to be something come into my hands."

It appears, and the court found, that though the conveyance of June 2, 1924, was given "as security" Olson in fact assumed the relationship of trustee and was in holding and in the practical administration of the conveyed property trustee for Cunningham or for the creditors named. Olson contends that when he paid the interest and signed the note he intended to repay the guardianship out of the proceeds of the sale of corn which he subsequently conveyed to Cunningham. He contends also that under the trust deed he had the right to pay the interest out of the proceeds of the property, and furthermore testifies that he told Cunningham that:

"I had used from the Aasheim minors to pay the interest with, and that I was holding the coupon as collateral. I said there was no reservation made at the time the trust deed was made, and that it was the understanding that the corn was to pay that obligation as soon as it was sold. That is the reason I borrowed the money, was because I had the corn and the price wasn't satisfactory and I held the corn for better prices, and used this money temporarily with the intention and understanding, of course, to replace it as soon as I sold the corn, which was done."

Also testifies that Mr. Cunningham said in reply "as long as that debt was paid that was the thing to do." Mr. Cunningham testifies, "I cannot recall having any such conversation with

him. * * * If any such conversation was had I think I should recall it. * * * Today is the first time I recall of having heard of the Aasheim minor." About November 17, 1924, Olson by check transferred from the bank account previously mentioned the amount of the note, $1140, to the bank account which he kept for the guardianship.

Appellant's "points relied upon for reversal" are the following:

"1. Under the facts in this cause, the grantor in the trust deed and bill of sale used the proceeds of the property strictly in accordance with the terms of the said trust deed, to wit: 'It is also understood that the said H., C. Olson, one of the first parties, shall be given the right to use the personal property herein mortgaged, if necessary, to pay the interest on mortgage indebtedness on the above described land and to pay taxes thereon and operating and living expenses thereof.' And the court erred in holding otherwise.

"2. That the said guardian received said funds from the said H. C. Olson in the ordinary course of trade and payment of obligations, and that the rule that proceeds of property wrongfully received may be impressed with a trust does not apply any more than as though Olson had taken these funds and paid his grocery bill, and the court erred in holding otherwise."

■ I. Appellant first argues that the lien of a chattel mortgage does not follow the proceeds of sale. While the claim filed and the trust deed are somewhat ambiguous yet it satisfactorily appears, as the lower court held, that the conveyance to Cunningham was not merely a mortgage. It was a conveyance in trust, in effect, as accepted and practically construed and administered, a declaration of trust. The appellant's evidence was given, the case was tried and the first point relied upon for reversal, above quoted, is framed upon that theory. It is unnecessary to express an opinion upon the technical relationship resulting from the practical administration of this trust by and between Olson and Cunningham. It is sufficient to say that the property sold by Olson and its proceeds in his hands belonged in equity to his creditors or immediately to Cunningham in trust for his creditors in accordance with the provisions of the trust

deed. The rule that the lien of a chattel mortgage does not follow the proceeds of sale has no application.

II. Olson before execution of the trust deed took funds of the guardianship to pay his own personal debt for interest and became liable to the estate of his wards for the funds so taken. When the deed of trust was executed that interest had been paid and discharged. The liability of Olson to his wards, or to their estate, arising from the use of their funds was in existence. But its payment out of the trust property conveyed to Cunningham in trust was not provided for in the trust deed. The trust deed was not given to secure that claim. The authority of the trustee Cunningham did not extend to the payment out of the trust funds of Olson's debts or obligations other than those named in the trust deed. He had no authority to permit the use of the trust funds for the payment of Olson's debt to the minors. Olson furthermore had the burden of proving that authority to so use the funds was given to him. Olson's testimony, as the trial court held, though Cunningham says only that he cannot recall ever having had any such conversation and if it had been had he thinks he should recall it, is in effect denied by an equally credible witness and in the light of the circumstances does not establish the authority which Olson claims to have had.

III. The proceeds of the property in Olson's hands did not belong to him individually. They were trust funds. He, in effect, without authority transferred them from one trust to another. He testifies that he had two or three thousand dollars in the same bank account "the same as it was in 1924." Olson knew that those identical funds belonged to his creditors or to Cunningham in trust for them. Olson as guardian is not in the position of having received in good faith, without notice of the real ownership, funds belonging to another but not earmarked. He cannot claim ignorance as guardian of facts that he was perfectly acquainted with at the very moment that he was undertaking to act as guardian. He knew that he was misappropriating trust funds in depositing the funds in controversy to the guardian account. On the record here the $1140 in controversy must be held to be trust funds belonging to claimant Cunningham as trustee wrongfully commingled with and still in the funds held by Olson as guardian. The decree for its payment by the guardian out of the guardianship property to the claimant, John

Cunningham, as trustee, must, therefore, be sustained. Independent District v. King, 80 Iowa 497; In re Assignment of Knapp, 101 Iowa 488; Davenport Plow Co. v. Lamp, 80 Iowa 722; Page County v. Rose, 130 Iowa 296; Leach v. Farmers Savings Bank, 204 Iowa 1083; Hanby v. First Savings Bank, 197 Iowa 150.—Affirmed.

FAVILLE, C. J., and EVANS, STEVENS, ALBERT, KINDIG, WAGNER and GRIMM, JJ., concur.