IN RE ESTATE OF SIDNEY E. RORICK.

No. 42279.

April 3, 1934.

James E. Remley, for appellant.

E. A. Johnson and Wm. W. Crissman, for appellees.

Mitchell, J.—Sidney E. Rorick died testate in Jones county, Iowa, and his will was duly admitted to probate on the 1st day of May, 1930, and W. C. Tyrrell, Jr., a nephew of the deceased, was duly appointed executor. The deceased was a resident of Oxford Junction, Iowa, and did business with a bank in that town. W. C. Tyrrell, Jr., was a resident of Beaumont, Tex., and had formerly lived at Belmond, Iowa, and was a director, president, and a heavy stockholder, of the State Bank of Belmond. He transferred the funds belonging to the estate from the Oxford Junction bank to the State Bank of Belmond, and thereafter deposited the money which came into his hands, belonging to the estate, in the State Bank of Belmond to the credit of W. C. Tyrrell, Jr., as executor, the account

being an ordinary checking account. Between $60,000 and $70,000 were handled by the executor.

On the 21st of July, 1931, the State Bank of Belmond closed its doors, and L. A. Andrew, who was then the superintendent of banking, was appointed receiver. There was on deposit in said bank at said time, belonging to the estate, the sum of $7,669.74. Between the time of the closing of the bank and the filing of the final report, the receiver of the bank had paid two 10 per cent dividends thereon, amounting to $1,533.94, leaving a balance owing to said executor by the receiver of the bank, at the time of the executor's final report, of $6,135.80. In his final report the executor proposed to assign to the legatees their shares under the decedent's will, his claim against the receiver of the State Bank of Belmond in the sum of $6,135.80, and prayed in his final report for an order and decree of the court so to do, and, upon such authorization and assignment, said executor prayed to be discharged and that his bond be released.

Only three of the legatees objected to the said proposal to assign the claim against the receiver of said bank on said deposit. They filed written objections, urging that said deposit was lost as the result of the fault and negligence of the executor, and prayed that said executor be required to account in cash for said deposit.

The final report of the executor was filed on the 5th day of October, 1932, approximately one year and three months after the closing of said bank. The case came on for trial upon the objections, on the 24th day of February, 1933, and at the time of the trial it was stipulated between the parties "that a jury trial is waived and it is agreed that this action, objections to final report, should be tried to the court without a jury as an equity matter." Evidence was offered and the lower court sustained the objections to the final report and entered an order and judgment, finding that W. C. Tyrrell. Jr., executor, was not entitled to credit for any loss resulting from the closing of said State Bank of Belmond, Iowa, and said executor must account in cash to these objectors for the sum of $2,045.28 plus interest, and that same was to be distributed by said executor to these objectors; said amount being the amount the objectors were entitled to. From this judgment and decree of the lower court, W. C. Tyrrell, Jr., the executor, being dissatisfied, has appealed to this court.

The record in this case shows that W. C. Tyrrell, Jr., was duly

appointed executor of the estate of Sidney A. Rorick on the 17th day of May, 1930, by the district court of Jones county, Iowa, and that he qualified by filing bond, as required. That there came into his hands, as said executor, a large amount of personal property, consisting of bonds, notes, and moneys. That at the time of his appointment he was a nonresident of the state of Iowa. That he had formerly lived at Belmond, Iowa, but had moved away in the year 1927 to Texas. That he spent his summers in and around Belmond, where he had property and where he was also president of a bank. Not only was he president of the State Bank of Belmond, Iowa, but he was also a director and one, if not the largest, of the stockholders in said bank. The bank had a capital stock of $80,000, and he was the owner of $15,000 worth of stock, or had almost one-fifth interest in the bank. Upon his appointment as executor of the estate of Sidney A. Rorick, he transferred the funds belonging to the estate, which were in a bank at Oxford Junction, Iowa, to the bank of which he was president at Belmond, to wit, the State Bank of Belmond. That the deposit of the money belonging to the said estate in the State Bank of Belmond was made on his own initiative and without any request or application to the court for authority to make such deposit. That he had on deposit in said bank the sum of $4,779.38 on February 16, 1931, and between said date and July 21, 1931, the date of the closing of the State Bank of Belmond, he deposited in said bank additional sums totaling $7,254.51. The bank was closed by resolution of the board of directors on July 21, 1931, and in connection with the closing of the bank an action was started in the district court of Wright county by the superintendent of banking against the State Bank of Belmond. In that proceeding it was adjudicated that the bank was insolvent, and L. A. Andrew was appointed receiver thereof, and as receiver he proceeded to liquidate the assets of said bank.

The only error relied upon by the appellant for reversal is the sufficiency of the evidence to sustain the finding and judgment of the district court, contending that said finding was contrary to the evidence and contrary to the law as applied to the evidence.

In a very recent decision, Justice Stevens, speaking for this court in the case of In re Enfield's Estate, 217 Iowa 273, 251 N. W. 637, laid down the rules governing cases of this kind:

"The duty of an administrator or other trustee in such cases

is well settled in this state. Such officers are not insurers of the safety of the funds coming into their possession by virtue of their respective offices, but they must exercise that degree of care and prudence with reference thereto that ordinarily prudent men exercise in regard to their own affairs. Officer v. Officer, 120 Iowa 389, 94 N. W. 947, 98 Am. St. Rep. 365; In re Estate of Workman, 196 Iowa 1108, 196 N. W. 35; Cronk v. American Surety Co., 208 Iowa 267, 225 N. W. 454; In re Skinner's Estate, 215 Iowa 1021, 247 N. W. 484; In re Riordan's Trusteeship, 216 Iowa 1138, 248 N. W. 21. * * *

"Appellant was the cashier and general manager of the People's Savings Bank. He was charged, therefore, as a matter of law, with knowledge of the bank's financial condition. Leach v. Beazley, 201 Iowa 337, 207 N. W. 374; Baumchen v. Donahoe, 215 Iowa 512, 242 N. W. 533; In re Guardianship of Aasheim, 212 Iowa 1300, 236 N. W. 49."

Certainly, if the cashier of a bank is chargeable as a matter of law with knowledge of the financial condition of the bank, the president of the bank, the chief executive, is also chargeable as a matter of law with knowledge of the bank's financial condition. But it is the claim of the appellant in this case that he was simply a nominal president. He says that he protested his election; that he accepted it because they urged and forced it upon him. But never at any time did he tender his resignation or refuse to accept the presidency of this bank. He was willing to accept the honor and the benefits of being president of this bank, and, while it may not now appear to any one that there was any honor or benefit connected with being president of a bank in a small town, yet at one time it was so considered. And by accepting the position as president he cannot avoid the responsibility of that position by simply saying: "I was a nominal president; I protested my election." We are all now aware of the fact that in Iowa during the past few years there have been too many nominal presidents of banks. A man who accepts the position of president of a bank becomes by the acceptance the head of that bank, and, as said head, he is charged with knowing the financial condition of his bank at all times. Not only was the appellant in this case the president of the bank, but he was also a director and the largest stockholder, owning approximately one-fifth of the stock. He was in and around Belmond for several months before the bank

closed. He attended a directors' meeting. He consulted with the cashier about the affairs of the bank. He deposited the funds of this estate during that period of time in the bank without any order of court, and on his own initiative, and he cannot now come into court and say: "Yes, I was the president; yes, I was a director; yes, I own one-fifth of the stock; yes, I attended directors' meetings; but I did not know anything about the financial condition of the bank."

What was the financial condition of the bank, as shown by the record in this case during this period of time? True, the cashier of the bank testified that he believed the bank solvent at the time it closed, and that, in his judgment, the bank would not have been forced to close except that the other bank in the town closed that morning and that at about the hour the bank usually opened there was a big crowd in front of the bank, waiting to withdraw their deposits. The record shows in February, 1931, the State Bank of Belmond had bills payable in the amount of $40,000, whereas, on July 21, 1931, the date of the closing of the bank, it had bills payable of $55,000—an increase of $15,000. On July 21, 1931, the day the bank closed, it had cash on hand in the sum of $3,866.38. The cashier of the bank explained that the cash had reached such a low level because of the fact that on the day before they gave their competitor, the bank across the street, the sum of $4,000 in cash. That bank, of course, had closed and it was not possible for them to get that money back. And so, on the morning the bank closed, it had less than $4,000 of cash on hand, while the appellant in this case, the executor, had almost $8,000 in his account. The bank had deposits in the amount of $313,792.72. The bank was forced to close because there were enough people outside its doors on the morning of July 21, 1931, waiting to make withdrawals, to take nearly all—if not all—of the paltry sum of $3,866.38 which the bank had then on hand in cash. There had been a general shrinkage of deposits in said bank during the spring and summer of 1931, which resulted in depleting the cash of the bank approximately from $12,000 to $15,000 in a period of some four months. The State Banking Department on its last examination of the bank prior to its closing, made in February of 1931, directed that the State Bank of Belmond pay its loans and liquidate its assets and make some specific charge-offs. But, in disregard of said direction—or perhaps through its inability to do so—it did not take any steps

to liquidate its own assets and, instead of decreasing its own indebtedness, increased same.

This court of course must take judicial notice of the conditions that existed in the spring and early summer of 1931, for during that period of time there was a rapid decline in prices and values, all of which was well known to the appellant. The assets of the State Bank of Belmond consisted principally of money loaned to the farmers and business men of that community. To protect the loans a large amount of chattel mortgages had been taken, and, according to the testimony of the cashier, these loans were not liquidated as suggested in the bank examiner's report of February, 1931, because the price of the securities was declining at the time. It is also interesting to note that, although the bank had been closed a year and seven months at the time of the trial, and although it had a capital stock of $80,000, the receiver had only been able to pay to the depositors the amount of 20 per cent by way of dividends.

The only defense which the appellant urges here is the fact that he was a nominal president. It does not require any imagination to foresee the ultimate result if this court or any court will permit a president and director of a bank to avoid liability in such a case as the one at bar, by claiming that he was only a nominal president and had no actual knowledge of its condition. When a party accepts the position of president of a bank, he accepts the responsibilities that that position carries with it, and he cannot escape those responsibilities by saying: "I am a nominal president; I protested my election; I accepted the presidency because my friends urged it upon me."

And so in the case at bar, the appellant, who was the president, a director, and the heaviest stockholder of the State Bank of Belmond, Iowa, as a matter of law was charged with knowing the financial condition of the bank. He could have protected himself by securing the proper order of court, as required by statute. He did not see fit to do so.

A careful reading of the record convinces us that the lower court was right, and the judgment and decree of the lower court must be, and it is hereby, affirmed.

STEVENS, KINDIG, ANDERSON, KINTZINGER, and DONEGAN, JJ., concur.