In re Matter of Filardo, Incompetent: Bishop, Guardian, and another, Appellants, vs. Hamilton, Guardian *ad litem,* Respondent.

*April 28—June 2, 1936.*

For the appellants there were briefs by *Kopp & Brunck-horst*, and oral argument by *A. W. Kopp* and *W. R. Kopp,* all of Platteville.

For the respondent there was a brief by *Fiedler, Board-man, Jones & Fiedler* of Mineral Point, attorneys, and *Frank D. Hamilton* of Dodgeville, guardian *ad litem,* and oral argument by *Mr. D. O. Jones, Mr. N. S. Boardman,* and *Mr. Hamilton.*

MARTIN, J. The respondent contends that the several investments are voidable at the election of the representatives of the incompetent, because they were sold by Mr. Bishop, as a stockholder, director, and chief executive officer of the Iowa County Bank, to himself in his capacity as guardian of the person and estate of the incompetent.

It is conceded that during the years of 1928, 1929, and 1930, the guardian was the chief executive officer of the Iowa County Bank. He was the second largest stockholder. He also served either as cashier or vice-president during said period. That there was a conflict of interest in his capacity

as guardian on the one hand, and as chief executive officer of the bank on the other, there can be no question. It is obvious that the Iowa County Bank was, during the period in question, hard pressed in maintaining the required cash reserve. Its troubles in that regard were no different than the experiences of other banks in all sections of Wisconsin and throughout the nation. Bank assets were frozen, particularly the type of assets shown by the foregoing statement of facts. It is quite probable that they would not be found in Mr. Bishop's hands as guardian if, as the chief executive officer of the bank, he could have found other purchasers. Public policy forbids such transactions.

The rule stated in *Shaw v. Crandon State Bank,* 145 Wis. 639, 653, 129 N. W. 794, is applicable to the facts in the instant case. There it was held that a stockholder and director in a manufacturing corporation, who was also a stockholder and director in a bank, could not, because of his fiduciary relation to both corporations, contract for either of them as vendor or vendee, where his personal interest conflicted with his duty as fiduciary. The court said:

"The circuit court as to these two tracts on which the bank had security applied the wrong rule, as shown by 2 Pom. Eq. Jur. § 957, where two classes of cases are recognized: One where the fiduciary is dealing with his beneficiary, each contracting for himself; the other where the fiduciary in the transaction as representative of his beneficiary contracts or deals with himself in his personal or individual capacity, thus being both vendor and vendee, obligor and obligee, releasor and releasee. In the first class of cases the transaction may sometimes be upheld upon a showing of good faith, valuable consideration, and that the transaction was not inequitable. In the second class of cases this showing will not avail.

" 'The second class includes all those instances in which one party, purporting to act in his fiduciary character, deals with himself in his private and personal character, without the knowledge of his beneficiary, as where a trustee or agent to sell sells the property to himself. Such transactions are

voidable at the suit of the beneficiary, and not merely presumptively or *prima facie* invalid. . . . The circumstances show that there could not possibly be the good faith, knowledge, and free consent required by the principle, and therefore the result which is a rebuttable presumption in the first class of transactions becomes a conclusive presumption in the second.'"

To the same effect, see *Hutson v. Jenson,* 110 Wis. 26, 40, 85 N. W. 689. There the court said:

"The application of this rule is not dependent upon the existence either of fraud or mismanagement; for its foundation is in a sound public policy, which would exclude all necessity of investigation of either the honesty or the wisdom of such dealings in a dual capacity."

A fiduciary, who in contracting acts for himself and for his beneficiary, cannot escape the invalid consequences of his act by mere proof that he acted in good faith and paid a valuable consideration. *Shaw v. Crandon State Bank, supra; In re Taylor Orphan Asylum,* 36 Wis. 534; *Melms v. Pabst Brewing Co.* 93 Wis. 153, 66 N. W. 518; *McClear v. Root,* 147 Wis. 60, 63, 132 N. W. 539. The same rule is recognized in the federal courts. In *Michoud v. Girod,* 4 How. 503, 555, the court said:

"The general rule stands upon our great moral obligation to refrain from placing ourselves in relations which ordinarily excite a conflict between self-interest and integrity. It restrains all agents, public and private; but the value of the prohibition is most felt, and its application is more frequent, in the private relations in which the vendor and purchaser may stand towards each other. . . . In this conflict of interest, the law wisely interposes. It acts not on the possibility, that, in some cases, the sense of that duty may prevail over the motives of self-interest, but it provides against the probability in many cases, and the danger in all cases, that the dictates of self-interest will exercise a predominant influence, and supersede that of duty. It therefore prohibits a party from purchasing on his own account that

which his duty or trust requires him to sell on account of another, and from purchasing on account of another that which he sells on his own account. In effect, he is not allowed to unite the two opposite characters of buyer and seller, because his interests, when he is the seller or buyer on his own account, are directly conflicting with those of the person on whose account he buys or sells."

*Magruder v. Drury,* 235 U. S. 106, 119, 35 Sup. Ct. 77.

In *Ottawa Banking & Trust Co. v. Crookston State Bank,* 185 Minn. 22, 239 N. W. 666, the facts are nearly identical to those in the instant case. There, a guardian deposited his ward's money in a bank, of which it appears the guardian was in control. Thereafter, as the chief executive officer of the bank, he exchanged a note and mortgage owned by the bank for the $2,500 in his account as guardian. Later, the bank became insolvent; litigation followed. Of the transaction the court said:

". . . He [the guardian] acted in effect both as bank and as guardian. As an officer of the court and trustee of a probate estate he owed a legally imposed duty to act in the interest of the estate of his ward. As an officer of the bank his personal interest was hostile to his duty as trustee. When a trustee trades the trust property to himself or to his advantage, his *cestui* may avoid or affirm it as he chooses without showing damage though no actual fraud is practiced upon him. . . . When the principle was first applied in our state, the court said that to state it was but to add one more case to the line of uniform authority. It was then old in English and early American law. But the lay mind has failed to appreciate that the law will not permit the trustee to debate his good faith or permit him to submit himself to the temptation of acting in his own interest rather than with fidelity to his trust. The law will not put him to the test. It will not inquire. . . . And so far has the quarrel gone that trustees have sometimes insisted in recent cases but without success, claiming something from a statute, upon the right to sell securities owned by them in an individual capacity to themselves as trustees. . . . The mere statement that the law does

not permit a trustee as an individual to deal with himself as trustee should be enough. Slight reflection ought to persuade a trustee that if as trustee he can trade with himself as an individual his usefulness as a trustee is gone; and with it will go the opportunity of acting as such among those who understand that he has such power; for if he has such power no one will want him long as trustee."

*Smith v. Tolversen,* 190 Minn. 410, 252 N. W. 423; *Bold v. Mid-City Trust & Savings Bank,* 279 Ill. App. 365; *Kelsey v. Detroit Trust Co.* 265 Mich. 358, 251 N. W. 555; *Matter of Peck,* 152 Misc. 315, 273 N. Y. Supp. 552.

In Restatement, Trusts, p. 435, § 170, the rule is stated thus:

"The trustee violates his duty to the beneficiary if he sells to himself as trustee his individual property or property in which he has a personal interest of such a substantial nature that it might affect his judgment. It is immaterial that the trustee acts in good faith in purchasing the property for the trust, and that he pays a fair consideration. This is true whether he purchases for the trust property which he owns individually, or property owned by a firm of which he is a member, or property owned by a corporation in which he has a controlling or substantial interest."

It is ably argued on behalf of the appellants that Mr. Bishop, as guardian, was not dealing with himself in purchasing the securities in question from the Iowa County Bank; that he was merely a stockholder and officer in the banking corporation from which the questioned securities were purchased for the trust estate. True, Mr. Bishop owned only sixty-six shares of the one thousand shares of capital stock outstanding. A substantial ownership of the stock of the bank is not the only test as to whether he, in fact, was acting in a dual capacity. His income, on account of his official connection with the bank as its chief executive officer, may have more significance than the number of shares owned or the actual value thereof. Upon the undisputed facts, it

must be held that Mr. Bishop had a substantial personal interest in the bank and in keeping it a going institution. The standard of his accountability to the incompetent is exhaustively discussed in *Estate of Allis,* 191 Wis. 23, 209 N. W. 945, 210 N. W. 418. The court said:

"A trustee occupies a position of peculiar responsibility. A trustee is selected because of confidence in his diligence, prudence, and absolute fidelity, as well as in his ability to so administer the trust as to protect those who, through infancy or other cause, are not able to protect their own interests. . . .

"Wisconsin early adopted the rule that trustees must exercise more than ordinary diligence and vigilance in the management of a trust estate. *Hutchinson v. Lord,* 1 Wis. *286, 309. Good faith alone in making an investment will not protect a trustee. *Simmons v. Oliver,* 74 Wis. 633, 636, 43 N. W. 561. . . .

"This state has consistently adhered to the strict rule with reference to the liability of trustees early adopted in New York, rather than to the more liberal rule adopted in Massachusetts. . . .

" ' ". . . But to be guarded carefully and invested cautiously, so that principal, as well as interest, may be forthcoming at the appointed time. While he must be as diligent and painstaking in the management of the trust estate as the average prudent man is in managing his own estate, he may not always place the trust funds where he, or the average prudent man, would place his own funds." . . . The trustees are bound to act in good faith and exercise a sound judgment and prudent discretion in making an investment.' *Pabst v. Goodrich,* 133 Wis. 43, 73, 74, 113 N. W. 398. . . .

" 'A trustee has not unlimited authority to invest as an ordinarily prudent man would invest his own; he must take such risks only as an ordinarily prudent man would take who is a trustee of the money of others. . . .' *In re Buhl's Estate,* 211 Mich. 124, 131, 178 N. W. 651, 654, 12 A. L. R. 569, 574."

The foregoing rules are again announced in *Estate of Dreier,* 204 Wis. 221, 226, 235 N. W. 439.

We conclude that the several investments are voidable at the election of the representatives of the incompetent because of the dual capacity in which the guardian acted. We also hold that, in the absence of such dual capacity, under the rules of strict accountability which this court has frequently announced, the guardian's account should have been surcharged with all the investments here in question.

The next question is the item of $773.12 for which the guardian claimed credit as compensation for his services for the years 1928 to 1935, inclusive. On the question of these fees, the trial court, in its decision, said:

"Fees are allowed fiduciaries for the faithful performance of duties. Where the fiduciary has so neglected his simple duties as to expose the estate to substantial loss, as in this case, no court can be justified in the allowance of such fees. It follows that fees must be denied the guardian; his expenses will be allowed as claimed."

Sec. 319.37, Stats. 1933, which is applicable, provides:

"Every guardian shall be allowed the amount of his reasonable expenses incurred in the execution of his trust and he shall also have such compensation for his services as the court in which his accounts are settled shall deem to be just and reasonable."

The matter of fees is within the discretion of the trial court. We have quoted the trial court's reason for denying fees to the guardian covering the period in question. In Restatement, Trusts, p. 750, § 243, the rule is stated thus:

"If the trustee commits a breach of trust, the court may in its discretion deny him all compensation or allow him a reduced compensation or allow him full compensation."

At page 751 we find the following statement:

"c. It is within the discretion of the court whether the trustee who has committed a breach of trust shall receive full compensation or whether his compensation shall be reduced or denied. In the exercise of the court's discretion the fol-

lowing factors are considered: (1) Whether the trustee acted in good faith or not; (2) whether the breach of trust was intentional or negligent or without fault; (3) whether the breach of trust related to the management of the whole trust or related only to a part of the trust property; (4) whether or not the breach of trust occasioned any loss and whether if there has been a loss it has been made good by the trustee; (5) whether the trustee's services were of value to the trust."

The trial court has exercised its discretion. Regardless of the statute, this court has held that a trustee, who neglects his duties or is guilty of bad faith or violates his obligations, forfeits his rights to compensation. *Mackin v. Hobbs,* 126 Wis. 216, 222, 223, 105 N. W. 305; *Will of Leonard,* 202 Wis. 117, 128, 230 N. W. 715. We are of the opinion that the trial court properly disallowed the item of compensation for which the guardian took credit in his account, and that it should be repaid to the trust.

It appears that the guardian had on deposit on open account in the Consolidated Bank, subject to check, the sum of $633.41. The county court surcharged his account with this amount. It further appears that Mr. Bishop was active in the movement resulting in the consolidation of the Iowa County Bank and the Farmers & Citizens Bank. He served on the committee which examined into the affairs of both banks at that time. Afterwards, he occupied one of the executive positions in the new bank.

The incompetent received a monthly income from the government which, it is claimed, was sufficient to maintain him and his family. Apparently the checking account here in question was the result of accumulations of this monthly income in excess of the family's expense. It was available for investment. This deposit was in the Consolidated Bank at the time waivers went into effect in January of 1932. The bank had been borrowing heavily to meet expenses. Substantial withdrawals were being made daily. It had difficulty in

maintaining the required cash reserve. Its bills payable were about twenty-five per cent of the deposits. It appears that in order to borrow the necessary money to continue operating, it was required to pledge its best assets to the extent of approximately $500,000. From the testimony of Mr. Bishop, it appears that the Iowa County Bank was in a dangerous condition in June of 1931, and that the banking commission had been critical of the situation for several months prior to that time. As chief executive officer of the Iowa County Bank, Mr. Bishop had ample notice of its condition long before the consolidation. The same applies to the Consolidated Bank before the waivers went into effect. Because of his official connection with both banks, he is charged as a matter of law with knowledge of their financial condition. *Schroeder v. State,* 210 Wis. 366, 244 N. W. 599, 250 N. W. 185; *Hobbins v. State,* 214 Wis. 496, 253 N. W. 570.

However, it is not necessary to rely on imputed knowledge. It appears without dispute that Mr. Bishop had actual knowledge, first, as to the financial condition of the Iowa County Bank and, later, as to the condition of the Consolidated Bank. In 26 R. C. L. p. 1314, § 171, it is stated:

". . . The general rule is that if a trustee in the exercise of his best judgment deposits money in a bank of good repute, he is not liable in the event of the failure of the bank. . . . And he will not be responsible though the bank was weak at the time of deposit, *unless that fact was known to him or might have been known by the exercise of ordinary prudence and diligence.* The question in all such cases is, was the trustee reasonably prudent and diligent in making or continuing the deposit?"

In *In re Culhane's Estate,* 269 Mich. 68, 256 N. W. 807, 810, the administrator, a trust company, was held liable for permitting a deposit to remain in the Pontiac Commercial & Savings Bank. Upwards of $80,000 was in a savings account designated "Pontiac Trust Company, Administrator of the

Estate of William A. Culhane, deceased." All of the directors of the trust company were directors of the bank, and the stockholders of the two institutions were identical. Economic and financial conditions were rapidly changing banking and business conditions. The deposits of the bank had shrunk from $20,624,480.96 on August 5, 1929, to $15,695,872.47 on April 27, 1931. On June 8, 1931, a run started on the bank and in six days about three and a half million dollars in cash was paid out to depositors. The officers immediately invoked the ninety-day clause on savings accounts. After a meeting with the banking commissioner, the directors decided not to reopen the bank on the following Monday.

The petitioners alleged negligence on the part of the administrator, the trust company, charging its officers were cognizant of the bank's weakened financial condition prior to the run, failed to protect the estate in depositing its funds in a bank in which it had an interest and in permitting them to remain there during the run on the bank. The probate court held the administrator personally liable for the funds in the commercial account but absolved it from liability as to the savings account. On appeal, the circuit court held the administrator liable for the entire amount with interest at four per cent on the savings funds. On appeal to the supreme court the decree was affirmed. The court said:

"Through its officers and directors this trust company [administrator] was in a position different from that of most corporate or personal trustees. It was in close touch with business and banking conditions and had a special knowledge of the status of its depositor bank—one might almost say daily and continuous knowledge. When the original deposit was made, the trustee knew that in the two previous years the deposits of the bank had decreased about twenty per cent and its liquidity was below the forty per cent generally believed to be the standard for banks operating under similar conditions. It also knew that stock market conditions affecting liquidity were chaotic with a general falling tendency; and

that little liquidity of loans was probable in the ordinary conduct of business. It is true it knew, or would be justified in assuming, that similar conditions existed as to banks in general, and in good faith it could, and evidently did, assume that trust funds were as safe in its affiliated bank as anywhere else. Perhaps, too, it thought them safe because of the opportunity to influence and control, through the interlocking directorate, the policy of the bank. But it is difficult to imagine upon what conception of reasonable diligence, as a trustee, the trust company could have believed that the deposit of trust funds in a savings account was proper under the circumstances in view of the right of the bank to demand ninety days' notice before withdrawal. Even if we assume that the trust company was not guilty of lack of diligence when it made the deposit, it must be apparent that the circumstances imposed upon it a duty of special and active watchfulness and care.

". . . Assuming the solvency of the bank, nevertheless the duty of the trustee to its trust estate is clear. The continuance of the deposit in the form of a savings account, subject to notice before withdrawal, was not an active and diligent management of the estate. The least it could have done in the discharge of its duty would have been not only to convert the money into immediately withdrawable funds, but also upon indication of further risk to actually withdraw the trust money."

To the same effect, see *In re Enfield's Estate,* 217 Iowa, 273, 251 N. W. 637; *In re Estate of Rorick,* 218 Iowa, 107, 253 N. W. 916; *In re Estate of Foster,* 218 Iowa, 1202, 256 N. W. 744.

In view of the guardian's knowledge of the financial condition of the Iowa County Bank and of the Consolidated Bank, and of the likelihood of either being closed at any time because of its financial condition, we must hold that there was a lack of diligence on his part in not withdrawing the deposit. It was proper to surcharge his account with this item.

The item of $121.73 evidenced by the deferred certificate issued by the Commercial State Bank of Madison, covering

the amount of the guardian's deposit in that bank at the time it went on the waiver plan, stands on an entirely different basis from the item of deposit above mentioned, for the reason that the guardian had no personal knowledge concerning the financial condition of the Commercial State Bank at the time he made the deposit. His account was properly credited with this item.

The order and judgment of the county court surcharging the guardian's account with the items relating to the Argall note and mortgage, the Kelly note and mortgage, the claim against the Consolidated Bank, and the amount claimed by the guardian for fees, will be affirmed. It will also be affirmed as to the allowance of a credit for the deposit in the Commercial State Bank of Madison. It will be reversed as to the Graber and Wiesen investments and as to the Bliss note and mortgage where the guardian's account should be surcharged with the whole investment.

*By the Court.*—Order and judgment affirmed in part and reversed in part. Record remanded, with directions to enter judgment in accordance with this opinion. Respondent to have costs.