BERLIN, Respondent, vs. RUEHLE, Appellant.

*October 11—November 15, 1949.*

590

592

For the appellant there were briefs by *Albert M. Kelly* and *Gold & McCann,* all of Milwaukee, and oral argument by *Ray T. McCann.*

*Alexander A. Markey,* attorney, and *Walter Schinz, Jr.,* of counsel, both of Milwaukee, for the respondent.

BROWN, J.    The principal dispute in this action arises from plaintiff's interpretation of the contract of August 20, 1940, that defendant was bound to sell within five years, and defendant's contention that the passage reading,

". . . and it is further agreed and understood that if after said conveyance said real estate is sold by the said Arthur Ruehle at any time within five years from the date hereof, one half of the net amount over and above the sum of twenty-five hundred dollars ($2,500) shall be paid by said Arthur Ruehle to the said Emil O. Berlin."

limited plaintiff's beneficial interest to a period of five years.

Appellant's position is thus stated in his brief:

"At that time [date of contract] the value of respondent's equity in the property was nominal; and the possibility of sharing—*not the right to share*—in a sale within five years was more than sufficient consideration to support the agreement and conveyance."

What the value of respondent's equity might have been at that time was not specifically found, but for $500 of his own

funds and $2,000 raised by mortgaging the premises to a commercial banker, appellant was able to redeem the property not only from the foreclosure judgment of $1,560.95 but from the other liens and charges affecting it, to pay the cost of refinancing and to pay Berlin's old income taxes. It is self-evident that commercial mortgages are not made up to the point where the value in excess of the loan is merely nominal. The court found the value of the premises at that time was $5,200. There was evidence to support the finding and it is consistent with the amount of the mortgage loan. This leaves an equity in respondent of $2,700. He was contributing at least as much in cash or value as did the appellant, even if credit of $2,000 is given appellant for his personal liability upon his note which was secured by the mortgage upon the property he had received from respondent. The trial court's conclusion that the parties were engaged in a joint venture is well supported.

In respect to appellant's contention that on December 1, 1941, respondent sold and released such rights as he may have had for $150, which incidentally he did not get in full till August 14, 1943, and was then told that his rights were ended, the trial court found the proof fell short of establishing an accord and satisfaction and that the effort by appellant to close out his coadventurer for a sum so grossly inadequate was a constructive fraud. Both the finding and the conclusion have support in the record and we approve the refusal to give effect to the purported settlement.

Appellant relies, further, upon an undisputed principle of law that where parties have made a contract for themselves a court should not change it or make another one for them. The trial court did neither of these objectionable things. The parties made a contract, as the court found and as the contract recites, to save and protect Berlin's equity. It contemplated liquidation of the real estate within five years. To accomplish the purpose, title was put in Ruehle. So far, so good. But if

the parties contemplated that a sale might not be made within five years, which we doubt, they neglected to state their respective rights and obligations in that situation and cannot now agree. It is a proper function of a court to determine, if it can, whether the contract covered this contingency and, if it did not, what disposition of the property and the rights of the parties therein may be equitable.

Appellant's interpretation is that respondent willingly and understandingly conveyed his property to appellant to have and keep as his own, forever, free from obligation unless within five years appellant might prefer to sell it, in which case he would divide the proceeds with respondent in the manner provided. That is, indeed, a novel way to protect an equity and the mere statement of the proposition demonstrates its incredibility. If we were held to an interpretation of the contract, prepared by appellant's lawyer and paid for by appellant, we could more reasonably find that it gave the appellant five years in which to liquidate the property, recover his $500 advance, take the first $2,000 for himself and thereafter share equally in any remaining proceeds; and if he failed or neglected to sell he would be bound to return respondent's title to him subject only to the mortgage placed upon it with respondent's consent.

The trial court concluded, as a matter of law, that under the agreement of August 20, 1940, which respondent had performed by transferring title to appellant, it was appellant's duty as a trustee to sell the property within five years. Of course the court was correct. Except by a sale there was no possibility that respondent would receive anything for his equity and if the agreement did not require such performance by appellant it would be simply a trick to cheat him out of his equity. But while the agreement imposed the obligation, appellant never recognized it. The statement repeatedly made in his brief that respondent had no right to insist on a sale amply demonstrates that appellant dealt with the property exclu-

sively in his own interest. He was not performing the contract at all, though respondent was not aware of appellant's claim of sole ownership until told so on August 14, 1943. It is, therefore, not necessary to determine the rights of the parties nor construe the contract as though the five years had elapsed without sale and without imputation of bad faith. Appellant's repudiation and breach of trust during the five-year period presents a different question. What are the rights of the parties when no contract has been or is being performed? The trial court returned respondent's property to him. It denied to appellant the compensation to which he would have been entitled if he had been faithful. It seems to us to be an entirely just and lawful exercise of the court's powers. ". . . a trustee, who neglects his duties or is guilty of bad faith or violates his obligations, forfeits his rights to compensation." *Matter of Filardo* (1936), 221 Wis. 589, 602, 267 N. W. 312. "Certainly the defendant, while denying the trust, and claiming all the property as her own, was in no position to charge the plaintiffs or the property with her services or the services of her agents and attorneys in respect to the same." *Fuller v. Abbe* (1900), 105 Wis. 235, 238, 81 N. W. 401. (Both cited in the opinion of the trial court.) To restore to appellant his out-of-pocket expense, protect him against liability on his mortgage note, but to deny him a profit, was within the sound discretion of the trial court and gives him no ground for complaint.

We further hold that the trial court was correct in determining that until August 14, 1943, when appellant asserted that respondent's rights had been terminated, nothing had occurred to warn respondent that appellant was making any claim inconsistent with his obligation of a joint adventurer or as a fiduciary, and until then the statute of limitations did not begin to run.

*By the Court.*—Judgment affirmed.