IN the MATTER OF the GUARDIANSHIP AND PROTECTIVE PLACEMENT OF VERMA L. B., Alleged Incompetent:

Michael A. YAMAT, Temporary Guardian, Petitioner-Appellant,

v.

VERMA L. B., Respondent.

Court of Appeals

*No. 96–2313. Submitted on briefs August 7, 1997.—Decided October 14, 1997.*

(Also reported in 571 N.W.2d 860.)

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Michael A. Yamat*, of Milwaukee.

On behalf of the respondent, the cause was submitted on the brief of *Laura Neuman* of the Elderly Advocacy Project, *Legal Action of Wisconsin, Inc.*, of Milwaukee.

On behalf of the respondent, an amicus curiae brief was submitted by *Patricia M. Cavey* and *Jeannine C. Valenti*, guardian ad litem for Verma L. B., of the *Mental Disability Law Center* of Milwaukee.

Before Wedemeyer, P.J., Schudson and Curley, JJ.

CURLEY, J.   Michael A. Yamat appeals from an order denying his request for attorney fees from Verma L. B.'s estate. Yamat argues that the trial court erroneously exercised its discretion by failing to set forth the process of reasoning which led to its decision, and by failing to make the necessary factual findings. We con-

clude that the trial court's decision was supported by proper factual findings, but we conclude that the trial court improperly failed to set forth the reasoning behind its decision. However, after an independent review of the record, which revealed a serious conflict of interest between Yamat, the temporary guardian, and Verma, his ward, we conclude that a sufficient basis exists to support the trial court's decision. Therefore, we affirm the trial court's order.

## I.  BACKGROUND.

In September 1995, Benjamin J. B., a son of Verma L. B., filed a petition for guardianship of Verma, alleging Verma was incompetent. The petition was drafted by Benjamin's attorney, Janet F. Resnick. The trial court appointed Attorney Jeannine C. Valenti as guardian ad litem for Verma. Later, after receiving an objection to the proceedings from Attorney Valenti, the trial court appointed adversary counsel for Verma. Following a delay in the guardianship proceedings, Benjamin filed a request asking for the appointment of a temporary guardian for Verma pursuant to § 880.15(1), STATS.

Benjamin's temporary guardianship petition asked that a temporary guardian be appointed for the specific purposes of admitting Verma to a nursing home or other similar facility; consenting to surgery and other related health care for her; paying her expenses related to her real property, medical care and living expenses; and preparing an inventory of her assets. The petition nominated Attorney Michael A. Yamat as the temporary guardian. Following a hearing, the trial court appointed Attorney Yamat as the temporary guardian of Verma's person and estate. The trial court's order gave Attorney Yamat authority to

admit Verma to a nursing home or other similar facility; to consent to health care for Verma but not to surgery; and to inventory her assets and pay necessary expenses relating to her property and care. Because of a divergence of opinions between the experts about Verma's medical condition, the trial court appointed an additional expert. As a result, the trial court adjourned the trial and extended Attorney Yamat's appointment as Verma's temporary guardian.

During a guardianship hearing, the trial court discovered that Attorney Yamat was currently employed by Benjamin's attorney's law firm, Resnick and Associates. The trial court also learned that during the pendency of the action Attorney Yamat paid Benjamin's attorney, Janet Resnick, then his employer, $3,000; and that Attorney Yamat paid himself attorney fees of approximately $4,000, all out of Verma's estate. Attorney Yamat did not seek court approval for either of these expenditures. By court order, these sums were later returned to Verma's estate.

The trial court appointed Attorney Patricia M. Cavey as amicus curiae, and, during a later hearing, heard her report. Attorney Cavey advised the court that she had inventoried Verma's property (a task Attorney Yamat was originally designated to perform) and found an automobile, as well as a possible interest in some real property which Verma may have inherited from a deceased son, to be missing from Verma's estate's inventory. Additionally, Attorney Cavey urged the court to disallow payment of $777.19 to Verma's daughter for new clothes, because Attorney Cavey had inspected Verma's home and the nursing home where she was residing and found that she owned no new clothes worth over $100. More importantly, Attorney Cavey urged the court to disallow payment of Resnick's

attorney fees and Yamat's attorney fees, partly because of a conflict of interest between Attorney Yamat and Verma resulting from Yamat's employment with Resnick's law firm. Attorney Cavey stated Attorney Yamat had a clear conflict of interest, given the fact that, while acting as Verma's temporary guardian, Attorney Yamat negotiated and obtained new employment with Attorney Resnick, who represented Benjamin, a party adverse to Verma. During the hearing, the trial court also learned that prior to securing employment with Benjamin's attorney, Attorney Yamat worked for an attorney who lived with Attorney Resnick and had, as Attorney Cavey described it, "an intimate relationship" with her.

Besides the turmoil surrounding the conflict of interest accusations, a significant dispute existed between the experts as to Verma's mental state. The doctor hired by Benjamin found Verma to be incompetent, while the court's expert and the one requested by the adversary counsel found her to be competent. Ultimately Benjamin withdrew his petition and the trial court found Verma competent.

After the disclosures regarding the conflict of interest, and despite Benjamin's unwillingness to proceed with the guardianship proceedings, both Attorneys Resnick and Yamat renewed their requests for payment of their attorneys' fees from Verma's estate. Attorney Resnick sought fees for herself, as well as fees for Benjamin's expert witness, who would have testified Verma was incompetent. Attorney Yamat sought fees of approximately $5,200. The trial court issued a memorandum decision which, among other things, denied Attorney Yamat payment of his fees from Verma's estate, stating: "[T]his court must find that the fees of the temporary guardian, the attorney

for the petitioners and the doctors hired by the petitioners are the responsibility of the petitioners herein who have withdrawn their petition." Attorney Yamat now appeals.

## II. ANALYSIS.

Attorney Yamat contends that the trial court erroneously exercised its discretion by finding that Benjamin, the petitioner, was responsible for paying his attorney fees, and by denying his request for payment of his attorney fees by Verma's estate. We conclude that the trial court improperly failed to set forth the reasoning behind its exercise of discretion. However, after independently reviewing the record, we conclude that there was more than an adequate basis for the trial court's decision.

Courts are statutorily authorized to compensate temporary guardians for their expenses by ordering payment from the ward's estate. *See* § 880.24(1), STATS.[1] Courts have discretion, however, to determine what constitutes a "just and reasonable" amount of compensation, and may even decide to award no compensation. *See Filardo v. Hamilton*, 221 Wis. 589, 601–02, 267 N.W. 312, 317 (1936), *and Barnes v. First Nat'l Bank*, 275 Wis. 356, 362–64, 82 N.W.2d 211,

---

[1] Section 880.24(1), STATS., provides:

**Compensation allowed from estate. (1)** FEES AND EXPENSES OF GUARDIAN. Every guardian shall be allowed the amount of the guardian's reasonable expenses incurred in the execution of the guardian's trust including necessary compensation paid to attorneys, accountants, brokers and other agents and servants. The guardian shall also have such compensation for the guardian's services as the court, in which the guardian's accounts are settled, deems to be just and reasonable.

215–16 (1957).[2] Our review is limited to whether the trial court properly exercised its discretion. "An appellate court will sustain a discretionary act if it finds that the trial court (1) examined the relevant facts, (2) applied a proper standard of law, and (3) using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." *State v. Gudenschwager*, 191 Wis. 2d 431, 440, 529 N.W.2d 225, 229 (1995). The trial court should set forth the basis of its exercise of discretion, as evidence for the appellate court that discretion was actually exercised. *See State v. Pharr*, 115 Wis. 2d 334, 342, 340 N.W.2d 498, 501 (1983).

First, we note that the trial court's conclusion that Attorney Yamat's fees were the responsibility of the petitioner, Benjamin, is without statutory support. Trial courts are only authorized by statute to order payment of a temporary guardian's fees from the ward's estate. *See* § 880.24(1), STATS. However, since Benjamin is not appealing that ruling, we need not decide the issue. Additionally, since the trial court ordered all of Attorney Yamat's fees to be paid by Benjamin, we treat its decision as an implicit finding that

---

[2] *Barnes v. First Nat'l Bank*, 275 Wis. 356, 82 N.W.2d 211 (1957), and *Filardo v. Hamilton*, 221 Wis. 589, 267 N.W. 312 (1936), involved § 319.37, STATS., 1955 and 1933, respectively, authorizing payment of guardians' expenses, which reads:

> Every guardian shall be allowed the amount of his reasonable expenses incurred in the execution of his trust and he shall also have such compensation for his services as the court in which his accounts are settled shall deem to be just and reasonable.

The previous versions of the statute read practically identically to the current statute, § 880.24(1), STATS., with the exception that the current statute includes examples of specifically compensable expenses.

Attorney Yamat was not entitled to any fees from Verma's estate.

Next, we conclude that the trial court improperly failed to set forth the rationale by which it reached its conclusion. While the trial court's order sets forth a number of facts pertaining to Yamat, the order completely fails to explain how the application of the relevant legal standard to those facts produced the court's conclusion. Although the court easily could have explicitly stated the reasoning for its decision to deny payment of Yamat's attorney fees from Verma's estate, the court instead·opted to merely state, "Accordingly, this Court must find that the fees of the temporary guardian . . . are the responsibility of the petitioners herein." In the same order, the court ably explained the reasoning behind its decision to deny payment of Benjamin's attorney's fees from Verma's estate. For example, the court stated:

> The Court can find no authority to sustain the argument that the alleged incompetent is now financially responsible for the expenses incurred by the petitioners who have withdrawn their petition. Sections 880.33(2) and 55.06(6), Wis. Stats., allow for reasonable attorney fees to be paid from the estate of the subject of the petition. These statutes provide statutory authority for the payment of the ward's attorney's fees and the guardian ad litem's fees from the ward's estate. This court finds that these statutes create a right to representation by an attorney for the ward. They do not, however, create a right for other litigants in a guardianship proceeding to have their litigation costs underwritten by a person who is the subject of the proceedings. ·
>
> After a careful search, this Court can find no authority whatsoever which obligates a proposed

ward to underwrite guardianship litigation. Clearly, parties are responsible for their own attorney's fees.

Although these statements by the court sufficiently demonstrated the court's reasoning process with respect to its denial of Benjamin's attorney's fees, they fail to apply to Yamat. Yamat, not the petitioner, was Verma's temporary guardian, and the court's denial of his fees must have been based on different reasons, which the trial court failed to set forth.

However, even if the trial court fails to set forth the reasoning behind its exercise of discretion, we need not reverse if an independent review of the record reveals a basis for sustaining the trial court's action. *State v. Pittman,* 174 Wis. 2d 255, 268, 496 N.W.2d 74, 80 (1993), *citing Pharr,* 115 Wis. 2d at 343, 340 N.W.2d at 502. After reviewing the record, we conclude that there was more than an ample basis for the trial court's decision.

The trial court had the authority to award Yamat zero compensation from Verma's estate, if the court found that Yamat had committed a breach of trust. *See Filardo,* 221 Wis. at 601–02, 267 N.W.2d at 317. Numerous facts indicate that Yamat did in fact breach the trust which was placed in him as Verma's temporary guardian. The appellant's performance as Verma's temporary guardian met with criticism early on from the trial court, and later from Verma's guardian ad litem, and the amicus curiae. Chief among the complaints raised was the apparent conflict of interest between Yamat and his client. The facts show that, at the time of Yamat's appointment as Verma's temporary guardian, Yamat was working for an attorney who lived with, and had a significant relationship with,

Benjamin's attorney. The trial court stated: "I would not by my wildest imagination have appointed [Yamat] had I known [of] the relationship" between Yamat's employer and Benjamin's attorney. Even worse, in the middle of the guardianship proceedings, Yamat changed jobs and began working for Resnick, the attorney representing Benjamin, a party in a directly adverse relationship to Yamat's client, Verma.

The record is devoid of any acknowledgment by Attorney Yamat of the patent harm created by such an obvious conflict of interest. On the one hand, in his capacity as temporary guardian, Yamat owed Verma absolute fidelity;[3] on the other, his employment relationship favored the petitioner's and his own interests. Attorney Yamat should have initially declined the appointment and certainly should have asked to be replaced after becoming employed by Benjamin's attorney. Yamat's failure to acknowledge and rectify the inherent, non-waivable conflict of interest created by his employment relationships, standing alone, is sufficient evidence that Yamat committed a breach of trust.

Complaints about Attorney Yamat were not, however, limited to his failure to perceive a conflict of interest with Verma due to his employment. As Verma's counsel noted in her brief, the record reflects that Attorney Yamat, after his appointment in November 1995, had significant contacts with Verma's children, immediately closed out Verma's bank account, but never met or called Verma until a month later. Despite the existence of an adversarial relationship between Verma, who vigorously opposed the

---

[3] "A trustee occupies a position of peculiar responsibility. A trustee is selected because of confidence in his diligence, prudence and absolute fidelity. . . ." *Matter of Filardo*, 221 Wis. at 600, 221 N.W. at 316.

guardianship action, and her children, who wished to wrest control of Verma's finances away from her, Attorney Yamat continued to look to the children for guidance, essentially ignoring Verma's wishes. An example of Yamat's misguided allegiance can be seen in his response to the trial court's question as to why he never undertook a personal inspection of Verma's house or prepared an inventory of her property.

> TRIAL COURT: First of all, I don't understand, you got up here on this witness stand and indicated you have never been into the house of, had nothing to do with her personal property, and had no knowledge of it. And you're the temporary guardian, you should have had knowledge.
> ATTORNEY YAMAT: I did have knowledge of it. Granted, I fully admit that I did not go to her property, but in my discussions with Mrs. B.'s children I know she had a house and possessions. I trusted Miss B.'s children . . . to indicate to me what her major assets were that I listed in the inventory.

Later evidence confirming that Yamat was derelict in his duties to Verma can be gleaned from Attorney Cavey's report to the court. In her amicus curiae report, Attorney Cavey stated that Attorney Yamat had reimbursed Verma's daughter approximately $777 for clothes, but that Attorney Cavey's investigation of Verma's house and her room in the nursing home revealed no new clothes worth $777. By paying Verma's daughter $777 without verifying that Verma had received clothing worth that amount, Yamat failed to protect Verma's estate. Even assuming that receipts might have been produced, a vigilant temporary guardian, in the exercise of his fiduciary duties, would have inquired why a woman of limited means who was residing in a nursing home would be in need of clothes worth

$777. Attorney Yamat ignored the court's order directing him to personally inventory Verma's assets and, worse, took the word of the very parties seeking control of Verma's property and approved the expenditures they presented without verification.

Indeed, even when seeking attorney fees from the trial court, Attorney Yamat operated under the assumption that it was Benjamin, the petitioner, whom he needed to please. In his argument to the trial court, he made no mention of Verma's position on his fees (Verma, by this time, had been found competent), but, instead, filed affidavits from Verma's two adult children who, no wonder, expressed their satisfaction with his services.

Attorney Yamat also unlawfully invaded his ward's estate. Yamat's payment of $3,000 to Benjamin's attorney and payment of $4,000 to himself from Verma's estate were clearly contrary to the court's orders. These payments, which Attorney Yamat authorized, amounted to almost one-fourth of Verma's modest $30,000 estate. When challenged by the trial court to state reasons for his actions, Attorney Yamat stated: "In my interpretation, my attorney's fees as well as any other attorneys, were administrative costs, expenses that we incurred to perform duties for the services of Miss B. judge. And I believe we were reasonably compensated for it." Attorney Yamat's statements to the trial court belie his duty to act as an independent party looking out for Verma's welfare. Yamat's response suggests that, instead of vigorously guarding Verma's estate from misuse, he viewed himself as part of a team of attorneys servicing Verma by underwriting the cost of litigation which attempted to find her incompetent.

Therefore, based on all of the evidence of Attorney Yamat's clear breach of trust, the trial court had a sufficient basis to award Yamat zero compensation from Verma's estate.

Attorney Yamat also argues that the trial court failed to make sufficient factual findings supporting its decision. He is incorrect. The trial court's memorandum decision sets out the history of the case. In it, the trial court makes note of the fact that it was Benjamin's attorney who nominated Attorney Yamat for the position of temporary guardian. The trial court also comments that, at that time of the nomination, "Mr. Yamat was in the office of Charles W. Jones and Associates . . . Upon information and belief on or about that time Attorney Jones and Attorney Resnick were living at the same address." Further, the trial court stated that "at no time was the Court advised that Mr. Yamat was in the employ of Attorney Jones." Later, the trial court writes: "At the hearing of March 29, 1996, the Court became cognizant of the relationship between Attorney Yamat and Attorney Resnick and was advised that Mr. Yamat had joined Ms. Resnick's firm in February of 1996." The memorandum decision goes on to say:

> [W]ithout court order in the four months that Mr. Yamat had been temporary guardian he had paid himself $4,050 out of the alleged incompetent's estate. The court further learned that Mr. Yamat had paid to his now employer the sum of approximately $3,000 as and for attorney fees. This sum was also paid from the funds of the alleged incompetent.

All of these factual findings support the conclusion that Attorney Yamat committed a breach of trust by not

reporting or rectifying a serious conflict of interest, by violating his fiduciary duties, and by engaging in self-serving conduct unbefitting a temporary guardian. Therefore, the court's decision was supported by proper factual findings.

Finally, Attorney Cavey, acting as amicus curiae, has brought a motion for frivolous costs pursuant to § 809.25, STATS., contending that "there is no basis in law to argue an erroneous exercise of discretion when the trial court is within its authority under law to deny compensation and outlines the conflicts of interest and self dealing in court and in the memo decision." We agree. The conflict of interest and self-dealing were obvious and resulted in the ward having no temporary guardian looking out for her interests. Although the trial court failed to set forth the reasons for its decision, it would be impossible for us not to conclude that a sufficient basis exists to support the trial court's decision. The bringing of an appeal under these circumstances falls within the ambit of the frivolous cost statute. Attorney Yamat could not possibly prevail. Accordingly, this matter is remanded to the trial court for a hearing to determine the costs to be ordered against the appellant.

*By the Court.*—Order affirmed and cause remanded with directions.